OPINION
{¶ 1} Defendant-appellant, Joseph P. Platt, appeals from a judgment of the Franklin County Court of Common Pleas that found defendant guilty of felonious assault, kidnapping, and two counts of involuntary manslaughter. For the following reasons, we affirm.
 {¶ 2} According to the state's evidence, defendant and Daniel Cole had a relationship and Cole periodically stayed at defendant's house. At some point in their relationship, Cole began to steal items from defendant, which Cole apparently later sold.
 {¶ 3} Around March 1997, defendant and another person, "Tony," charged into Cole's sister's house with guns drawn, looking for Cole. Defendant sought Cole because Cole, along with another person, "Richard," had stolen items from him. Defendant and "Tony" chased Cole and "Richard" upstairs. Noises were later heard from upstairs. Thereafter, Cole appeared with a bloodied nose and Cole and "Richard" left with defendant and "Tony." Upon leaving the house, defendant told Cole "that if he ever stole off of him again he would shoot him in the back of the head after they beat him up and throw him in the trash bag and throw him in the trash where he belonged."[1] When Cole returned to his sister's house later that same evening, he had a black eye and a bloodied lip. His nose was also still bloodied.
 {¶ 4} In early 1997, defendant, who at that time was a "[t]all, bigger guy" with "curly hair, some facial hair, beard, glasses,"[2] on several occasions also solicited others to physically attack Cole,[3]
defendant's then boyfriend, in retaliation for Cole's thievery against defendant; in exchange, defendant offered $500 as consideration. Ultimately, Aaron Swank and Michael Gordon accepted defendant's offer.
 {¶ 5} Thereafter, in the early morning of April 30, 1997, after Cole and a friend had been partying at a tavern, Cole entered a car in front of the tavern with a man named "Joe," who was later identified as defendant. When Cole entered the car, defendant appeared angry. Cole told his friend with whom he had been partying not to worry and that he would meet the friend in an hour at a designated location. Cole's friend waited, but Cole never arrived at the arranged location.
 {¶ 6} Around that same time, during the late evening of April 29, 1997, or the early morning of April 30, 1997, Aaron Swank, Michael Gordon, Stephanie Coleman, Keaton Payne, and Dawn Barrowman were at Swank's house on Heyl Avenue in Columbus, Ohio. At the time, Coleman and Barrowman were partying; this partying included alcohol and drug use. While Coleman and Barrowman were at Swank's house, a "heavy-set white guy"[4] came to the front door. The "heavy-set white guy" entered the house, met with Swank and possibly with Gordon and Payne. Later, "the heavy-set white guy," Swank, Gordon, and Payne left the house. A few minutes later, the "heavy-set white guy," along with Swank, Gordon, and Payne forcibly ushered a "skinny white male"[5] into Swank's house and took this male into the basement. According to Coleman, at the time that the "skinny white male" was forced into Swank's house, Swank held a gun to "the skinny white male's" head and pulled "the skinny white male's" shirt over his head to conceal his identity. According to this witness, at the time the "skinny white male" was forced into the house, his eyes were as big as 50-cent pieces."[6] Sporadic screams later were heard from the basement for several hours.
 {¶ 7} According to Barrowman, at one point, "the heavy-set white guy" came upstairs, retrieved something, and returned to the basement. Later, Payne came upstairs and left the house, appearing scared or frightened. The "heavy-set white guy" also came upstairs and left the house. Following the departure of Payne and the "heavy-set white guy," sporadic screams continued to be heard from the basement.
 {¶ 8} At some point, Gordon came upstairs and asked Coleman to clean up blood in the basement. Coleman refused. Gordon then asked Barrowman to clean up the blood in the basement. Barrowman also refused. Gordon then returned to the basement.
 {¶ 9} Eventually, Gordon and Swank came upstairs, and later Gordon, Swank, Coleman, and Barrowman drifted off to sleep.
 {¶ 10} On the afternoon of April 30, 1997, refuse was collected in Swank's neighborhood. While the operator of the refuse truck emptied his load at a refuse transfer station, an employee of the refuse transfer station discovered Cole's body among trash that was being unloaded. An autopsy revealed that Cole had sustained a fatal gunshot wound to the head and blunt trauma to his face, trunk, and extremities.
 {¶ 11} By indictment filed August 20, 2002, defendant was charged with felonious assault, kidnapping, and two counts of involuntary manslaughter. Each count contained a firearm specification. Defendant pled not guilty to all counts. A jury trial was later held.
 {¶ 12} The jury found defendant guilty of all counts, but it acquitted him of all firearm specifications. By judgment entry filed October 21, 2003, the trial court convicted defendant pursuant to the jury verdict and sentenced him to an aggregate sentence of 15 years of imprisonment.
 {¶ 13} From this judgment, defendant appeals and assigns the following errors:
Assignment of error number one
The trial court erred when it entered judgment against the defendant when the evidence presented on behalf of the state was insufficient to sustain the findings by proof beyond a reasonable doubt and the judgment was against the manifest weight of the evidence presented with respect to all of the counts in the indictment.
Assignment of error number two
The trial court erred when it entered judgment against the defendant when the evidence presented on behalf of the state was insufficient to establish that the acts of the defendant were the proximate cause of decedent's death and the judgment was against the manifest weight of the evidence in this regard.
Assignment of error number three
The trial court erred when it allowed the State to introduce inadmissible other act evidence against the defendant.
Assignment of error number four
The trial court erred when it allowed photographs to be admitted that were of no probative value and were prejudicial and inflammatory.
Assignment of error number five
The trial court erred when it gave improper instructions to the jury on the law of complicity over the objection of defendant.
Assignment of error number six
The trial court erred when it refused to issue an order for the return of the imprisoned co-defendants to franklin county as witnesses for the defendant and further erred when it held that a letter written by a co-defendant could not be admitted into evidence.
 {¶ 14} Defendant's first assignment of error asserts his convictions were against the manifest weight of the evidence and supported by legally insufficient evidence. Defendant's second assignment of error asserts there was insufficient evidence to support a finding that defendant's acts constituted proximate cause of Cole's death and, absent sufficient evidence, the convictions for involuntary manslaughter were against the manifest weight of the evidence. Because defendant's first and second assignments of error are interrelated, we will jointly address them.
 {¶ 15} When presented with a manifest-weight argument, an appellate court engages in a limited weighing of the evidence to determine whether the factfinder's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, reconsideration denied, 79 Ohio St.3d 1451; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. In State v. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, the Supreme Court of Ohio stated:
* * * The question for the reviewing court [in a manifest-weight claim] is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction."
Id. at ¶ 77, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. See, also, Thompkins, at 387.
 {¶ 16} Comparatively, when an appellant challenges his or her conviction as not supported by sufficient evidence, an appellate court construes the evidence in favor of the prosecution and determines whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by constitutional amendment on other grounds in State v. Smith (1997),80 Ohio St.3d 89; Thompkins, at 386; Conley, supra.
 {¶ 17} Here, defendant was convicted of one count of felonious assault, one count of kidnapping, and two counts of involuntary manslaughter based upon felonious assault and kidnapping respectively.
 {¶ 18} Former R.C. 2903.11,[7] defining felonious assault, in relevant part, provided:
(A) No person shall knowingly:
(1) Cause serious physical harm to another * * *;
(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11
of the Revised Code.
(B) Whoever violates this section is guilty of felonious assault, a felony of the second degree. * * *
See, also, R.C. 2901.22(B) (defining "knowingly"); former R.C. 2923.11(L) (defining "dangerous ordnance"); former R.C. 2901.01(A)(5) (defining "serious physical harm to persons"); former R.C. 2901.01(A)(3) (defining "physical harm to persons").
 {¶ 19} R.C. 2923.03, defining complicity, in relevant part, provides:
(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
(1) Solicit or procure another to commit the offense;
(2) Aid or abet another in committing the offense;
(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
(4) Cause an innocent or irresponsible person to commit the offense.
* * *
(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.
See, also, State v. Ensman (1991), 77 Ohio App.3d 701, 703, dismissed, jurisdictional motion overruled (1992), 63 Ohio St.3d 1409
(observing that "charging a defendant in an indictment as if he were a principal will sustain proof that he acted as an aider and abettor of the principal"); State v. Ratkovich, Jefferson App. No. 02-JE-16, 2003-Ohio-7286, at ¶ 10 (Vukovich, J., dissenting) (observing that a court may instruct the jury on complicity where the evidence at trial reasonably supports a finding that a defendant was an aider or abettor even if defendant is charged in the indictment as a principal).
 {¶ 20} In State v. Brown, Franklin App. No. 03AP-130, 2004-Ohio-2990 (Bryant, J., concurring in part and dissenting in part), appeal not allowed, 103 Ohio St.3d 1481, 2004-Ohio-5405, this court observed:
"* * * [T]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." State v. Johnson (2001),93 Ohio St.3d 240, 245-246. * * * The defendant's intent may be inferred from the circumstances surrounding the crime. Id. at 246. * * * The defendant's "`[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" Id. at 245, 754 N.E.2d 796, quoting State v. Pruett (1971),28 Ohio App.2d 29, 34. * * *
Id. at ¶ 73, quoting Ratkovich, at ¶ 15.
 {¶ 21} Here, although there was conflicting evidence about details concerning defendant's solicitations in response to Cole's thievery as well as conflicting evidence about details of the events at Aaron Swank's house, based upon the totality of the evidence, we find a jury reasonably could infer that defendant was the "heavy-set white guy" who came to Aaron Swank's house on or around April 30, 1997. Moreover, viewing the evidence in its totality, we find a jury reasonably could infer that Cole was the "skinny white male" that was forced into Swank's house at gunpoint and that defendant was complicit in inflicting serious physical harm to him.
 {¶ 22} According to the state's evidence, defendant, whose appearance in 1997 was consistent with that of a "heavy-set white guy," picked up Cole outside a tavern in the early morning of April 30, 1997. At the time that defendant picked up Cole outside the tavern, defendant appeared angry.[8] Approximately one month earlier, after chasing Cole with a gun drawn, defendant had warned Cole that if he stole from him again, he would be beaten, shot in the back of the head, and thrown in the trash. Furthermore, within close temporal proximity to the time when defendant picked up Cole outside a tavern on April 30, 1997, a "skinny white male" was taken to Swank's basement at gunpoint. From this same basement, periodic screams were heard for an extended period of time, and at some point requests were made to have blood cleaned up in the basement. Later, during the afternoon of April 30, 1997, Cole's body, with a fatal gunshot wound to the head, was found amid trash that was collected in Swank's neighborhood, and it was later determined that Cole received an antemortem injury to his nose.[9] Viewing this evidence in its totality, we find a jury reasonably could conclude that defendant was complicit in knowingly causing physical harm to Cole that carried a substantial risk of death.
 {¶ 23} In State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, this court stated:
A defendant will not be entitled to reversal on manifest weight or insufficient evidence grounds merely because inconsistent testimony was heard at trial. "While the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [1967,10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."State v. Nivens (May 28, 1996), Franklin App. No. 95AP-1236. A jury, as finder of fact, may believe all, part, or none of a witness's testimony.State v. Antill (1964), 176 Ohio St. 61, 67. * * *
Id. at ¶ 21.
 {¶ 24} Therefore, notwithstanding the evidentiary inconsistencies, we find the conflicting evidence does not support defendant's contention that his conviction for felonious assault was supported by legally insufficient evidence and that his conviction for felonious assault was against the manifest weight of the evidence.
 {¶ 25} Furthermore, defendant's suggestion that witnesses for the prosecution were biased is not persuasive. See, generally, State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus (holding that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts"). Here, as the trier of facts, the jury could assess the demeanor of prosecution witnesses and determine whether prosecution witnesses were biased and, if so, the jury could determine the witnesses' credibility and the weight to be given to these witnesses' testimony.
 {¶ 26} Accordingly, construing the evidence in favor of the prosecution, we find that there is legally sufficient evidence to support a finding that defendant was complicit in the felonious assault of Cole. Furthermore, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that defendant's conviction for felonious assault must be reversed and a new trial ordered.
 {¶ 27} R.C. 2905.01, which defines kidnapping, in relevant part, provides:
(A) No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
(2) To facilitate the commission of any felony or flight thereafter;
(3) To terrorize, or to inflict serious physical harm on the victim or another;
* * *
(B) No person, by force, threat, or deception * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * *.
(1) Remove another from the place where the other person is found;
(2) Restrain another of his liberty;
(3) Hold another in a condition of involuntary servitude.
(C) Whoever violates this section is guilty of kidnapping, a felony of the first degree. * * *
 {¶ 28} Here, as discussed above, a jury reasonably could infer that defendant was the "heavy-set white guy" that assisted in forcing at gunpoint a "skinny white male" into Swank's house. Furthermore, as discussed above, a jury reasonably could infer that Cole was the "skinny white male" who was forced at gunpoint into Swank's house, and a jury reasonably could infer that Cole was the person who was heard screaming from the basement.
 {¶ 29} Viewing the evidence in its totality, we find a jury reasonably could conclude beyond a reasonable doubt that defendant was complicit in forcing Cole from the place where he was found for the purpose of facilitating the commission of a felony, terrorizing Cole, or inflicting serious physical harm to Cole.
 {¶ 30} Accordingly, defendant's contention that his conviction for kidnapping was based upon legally insufficient evidence and was against the manifest weight of the evidence is not persuasive.
 {¶ 31} Former R.C. 2903.04,[10] defining involuntary manslaughter, in relevant part, provided:
(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.
* * *
(C) Whoever violates this section is guilty of involuntary manslaughter. Violation of division (A) of this section is a felony of the first degree. * * *
 {¶ 32} As discussed above, we have already concluded that defendant's felony convictions for felonious assault and kidnapping were supported by legally sufficient evidence and were not against the manifest weight of the evidence. Defendant contends, however, that the evidence was insufficient to establish that defendant's acts were the proximate cause of Cole's death and, absent sufficient evidence, defendant's convictions for involuntary manslaughter were against the manifest weight of the evidence.
 {¶ 33} In State v. Losey (1985), 23 Ohio App.3d 93, 95, construing former R.C. 2903.04, this court stated that for purposes of determining culpability for involuntary manslaughter, "`proximate result' bears a resemblance to the concept of `proximate cause' in that defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of the risk created by his conduct."
 {¶ 34} The issue thus resolves to whether Cole's death reasonably could be anticipated by an ordinarily prudent person as likely to result based upon the facts and circumstances of this case.
 {¶ 35} Here, defendant picked up Cole outside a tavern and later assisted in forcing Cole at gunpoint into Swank's basement, from which screams were later heard for several hours. Because a deadly weapon was used to forcibly usher Cole into Swank's basement, we find that a jury reasonably could conclude that Cole's death was a foreseeable consequence of defendant's complicity in Cole's kidnapping at gunpoint. Furthermore, viewing the evidence in its totality, a jury reasonably could infer that the screams that came from the basement for several hours were those of Cole and that it was Cole's blood that Gordon asked Coleman and Barrowman to clean up. Viewing the evidence in its totality, a jury could conclude beyond a reasonable doubt that defendant was complicit in setting forth a chain of events for which Cole's death was a foreseeable consequence, which was known to be, or should have been known to be, within the scope of the risk created by defendant's conduct.
 {¶ 36} Therefore, defendant's contentions that the evidence was insufficient to establish that his acts were the proximate cause of Cole's death and that his convictions for involuntary manslaughter were against the manifest weight of the evidence are not persuasive. Viewing the evidence in its totality, we find a jury could find beyond a reasonable doubt that defendant caused Cole's death as a proximate result of defendant's complicity in committing or attempting to commit a felony in violation of former R.C. 2903.04. Furthermore, we find defendant's convictions for involuntary manslaughter were supported by legally sufficient evidence and were not against the manifest weight of the evidence.
 {¶ 37} Accordingly, defendant's first and second assignments of error are overruled.
 {¶ 38} Defendant's third assignment of error asserts the trial court erred when it admitted into evidence "other acts" evidence.
 {¶ 39} "It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court."Columbus v. Taylor (1988), 39 Ohio St.3d 162, 164, rehearing denied,40 Ohio St.3d 707; see, also, State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. "The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." Taylor, at 164. Accordingly, our inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably, thereby resulting in material prejudice to defendant. State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶43, certiorari denied (2003), 539 U.S. 907, 123 S.Ct. 2256.
 {¶ 40} In State v. Wilkinson (1980), 64 Ohio St.2d 308, 314, the Supreme Court of Ohio held:
It is a well established rule that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial is inadmissible. * * * Evidence of other acts is not admissible simply because such proof demonstrates a trait, disposition, or propensity toward the commission of a certain type of crime.
 {¶ 41} Evid.R. 404(B) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 42} In State v. Smith (1990), 49 Ohio St.3d 137, the Supreme Court of Ohio explained:
Evid.R. 404(B) is essentially an extension of Evid.R. 404(A) which is intended to preclude a prejudicial attack on a defendant's character. Generally, extrinsic acts may not be used to prove the inference that the accused acted in conformity with his other acts or that he has a propensity to act in such a manner. However, Evid.R. 404(B) permits "other acts" evidence for "other purposes" including but not limited to certain enumerated issues. * * *
Id. at 140. See, also, State v. Rocker (Sept. 1, 1998), Franklin App. No. 97APA10-1341, dismissed, appeal not allowed, 84 Ohio St.3d 1448, citing Smith, supra (observing that
"[t]he listed exceptions within Evid.R. 404(B) are not exclusive, and `other acts' evidence not fitting within the enumerated categories may be admissible so long as the evidence is admitted for any proper purpose other than proving the defendant's propensity to act and conformity with a particular trait of his character").
 {¶ 43} Comparatively, R.C. 2945.59 provides:
In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
 {¶ 44} Under R.C. 2945.59, "evidence of other acts is admissible if the evidence tends to prove a specific element of the crime charged or one of the matters specifically enumerated in the statute." Smith, at 139-140.
 {¶ 45} In State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus, certiorari denied (1989), 490 U.S. 1075, 109 S.Ct. 2089, the Supreme Court of Ohio stated:
Because R.C. 2945.59 and Evid. R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. * * * The rule and the statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact `tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. * * *
 {¶ 46} Our task upon appellate review "is to determine the probative value of the evidence adduced, and whether it was admissible to prove any of the elements mentioned in R.C. 2945.59 and Evid.R. 404(B)." Smith, at 140.
 {¶ 47} Here, defendant asserts the trial court erred when it permitted testimony about defendant's search for Cole at Cole's sister's house, wherein he charged into Cole's sister's house with a gun drawn, chased Cole upstairs after Cole had stolen items from him, and threatened to shoot Cole in the back of the head and throw him in the trash if he stole from defendant again.
 {¶ 48} Based upon our review, we cannot conclude that the trial court acted unreasonably, arbitrarily, or unconscionably. Whether defendant was the "heavy-set white guy" at Swank's house on or around April 30, 1997, was at issue, and therefore the trial court's admission of this evidence was relevant and probative to determine identity. Additionally, this "other acts" evidence was relevant to a determination of defendant's motive. See, generally, Evid.R. 401 (defining "relevant evidence"). We therefore conclude that the "other acts" evidence tended to show by substantial proof items enumerated in Evid.R. 404(B) and R.C. 2945.59.
 {¶ 49} Nevertheless, although this evidence was relevant and probative, Evid.R. 403(A) provides that relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 50} While it is indisputable that the "other acts" evidence was unfavorable to defendant's case, "the decision to exclude evidence under Evid.R. 403(A) involves more than a determination of whether the evidence is merely prejudicial or unfavorable." State v. Bowman (2001),144 Ohio App.3d 179, 185. Rather than being merely prejudicial or unfavorable, "[t]he evidence must cause unfair prejudice, for if the term `unfair prejudice' simply meant prejudicial or unfavorable, anything adverse to a litigant's case would be excluded under Evid.R. 403." Id. (Emphasis sic.) Based upon our review, we cannot conclude that the trial court's admission of "other acts" evidence resulted in unfair prejudice.
 {¶ 51} Accordingly, we overrule defendant's third assignment of error.
 {¶ 52} Defendant's fourth assignment of error asserts the trial court erred when, over defense objections, it admitted photographs into evidence that were purportedly prejudicial and inflammatory.
 {¶ 53} "When considering the admissibility of photographic evidence under Evid.R. 403, the question is whether the probative value of the photographic evidence is substantially outweighed by the danger of unfair prejudice to the defendant. * * * The admission or exclusion of such photographic evidence is left to the discretion of the trial court." Statev. Morales (1987), 32 Ohio St.3d 252, 257, certiorari denied (1988),484 U.S. 1047, 108 S.Ct. 785. "A trial court abuses its discretion when it acts in an unreasonable, arbitrary or unconscionable manner. A reviewing court should not substitute its judgment for that of the trial court."State v. Finnerty (1989), 45 Ohio St.3d 104, 107.
 {¶ 54} According to Morales, "a trial court may reject an otherwise admissible photograph which, because of its inflammatory nature, creates a danger of prejudicial impact that substantially outweighs the probative value of the photograph as evidence. Absent such danger, the photograph is admissible." Id. at 257. Cf. State v. Maurer (1984), 15 Ohio St.3d 239, paragraph seven of the syllabus, certiorari denied (1985), 472 U.S. 1012,105 S.Ct. 2714, rehearing denied (1985), 473 U.S. 924, 106 S.Ct. 15
(providing a stricter evidentiary standard for the introduction of photographs in capital cases).
 {¶ 55} Here, some of the photographs that were entered into evidence were admittedly gruesome. However, "the mere fact that a photograph is gruesome or horrendous is not sufficient to render it per se
inadmissible." Maurer, at 265. The photographs in this case show the scene where Cole's body was discovered, his body before and during the coroner's examination, and his wounds. These photographs were probative with regard to showing Cole's injuries. Based upon our review, we conclude the admission of the photographs did not create a danger of prejudicial impact that substantially outweighed the probative evidentiary value of the photographs.
 {¶ 56} Accordingly, defendant's fourth assignment of error is overruled.
 {¶ 57} Defendant's fifth assignment of error asserts the trial court, over defendant's objection, improperly instructed the jury about the law of complicity.
 {¶ 58} "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Becker v. Lake Cty. Mem. Hosp. West (1990), 53 Ohio St.3d 202,208, see, also, State v. Price (1979), 60 Ohio St.2d 136, paragraph four of the syllabus, certiorari denied (1980), 446 U.S. 943, 100 S.Ct. 2169;State v. Hardy (1971), 28 Ohio St.2d 89, 92.
 {¶ 59} Defendant asserts the trial court erred when it instructed:
A common purpose among two or more people to commit a crime need not be shown by positive evidence, but it may be inferred from circumstances surrounding the act and from the defendant's subsequent conduct. Criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed. In addition, mere presence can be enough if it is intended to and does aid the primary offender.
(Tr. Vol. IV, at 631; Jury Instructions, at 12.)
 {¶ 60} Defendant contends the trial court failed to properly instruct the jury about the requisite criminal intent to support a conviction of complicity, and the trial court's instruction concerning "positive evidence" was confusing, misleading, and incorrect.
 {¶ 61} In addition to the above instruction, the trial court earlier instructed the jury as follows:
Before you can find the defendant guilty of a crime or specification as a complicitor or aider and abettor, you must find beyond a reasonable doubt that on or about the 29th day of April 1997 through the 30th day of April 1997, in Franklin County, Ohio, the defendant solicited or procured another to commit the offense or aided or abetted another in committing the offense with the same knowledge or purpose as required by the offense under consideration.
(Tr. Vol. IV, at 630; Jury Instructions, at 12.)
 {¶ 62} The trial court also earlier provided this jury instruction:
Evidence may be direct or circumstantial, or both. Direct evidence is the testimony given by a witness who has seen or heard the facts to which he or she testifies. * * * Circumstantial evidence is proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow, according to the common experience of mankind. * * * Direct and circumstantial evidence are of equal weight. * * *
(Tr. Vol. IV, at 612-613; Jury Instructions, at 2.)
 {¶ 63} After reviewing the jury charge as a whole, we cannot conclude the trial court's instruction concerning "positive evidence" probably misled the jury in a manner affecting defendant's substantial rights or that the trial court improperly instructed the jury about the requisite culpability to find defendant complicit in the crimes for which he was charged. See R.C. 2923.03 (complicity); Black's Law Dictionary (8 Ed. 2004) 596 (observing that "direct evidence" may also be termed "positive evidence"); State v. Wilson (App. 1946), 47 Ohio Law Abs. 636, 639, 70 N.E.2d 658 (observing that "[i]t is immaterial whether the court characterized the evidence which it described as direct or positive inasmuch as he properly defined the elements thereof. * * * [T]hese two types of evidence are frequently referred to as identical and we find no prejudicial error whatsoever in the language employed in the charge").
 {¶ 64} Defendant's fifth assignment of error is therefore overruled.
 {¶ 65} Defendant's sixth assignment of error asserts the trial court erred: (1) when it refused to order the return of imprisoned co-defendants to Franklin County so that these co-defendants could testify on defendant's behalf, and (2) when it failed to admit into evidence a letter that was written by Michael Gordon.
 {¶ 66} Pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, an accused has a right to compulsory process to obtain favorable witnesses or evidence. State v. Blankenship (1995), 102 Ohio App.3d 534, 550, dismissed, appeal not allowed, 73 Ohio St.3d 1426, citing Pennsylvaniav. Ritchie (1987), 480 U.S. 39, 56, 107 S.Ct. 989; Columbus v. Cooper
(1990), 49 Ohio St.3d 42, 44. See, also, Washington v. Texas (1967),388 U.S. 14, 19, 87 S.Ct. 1920.
 {¶ 67} Here, defendant subpoenaed Aaron Swank to testify at trial. However, although defendant subpoenaed Swank, at trial defendant did not call Swank to testify on his behalf. Having failed to call Swank as a witness on behalf of defendant, defendant's contention that the trial court erred by refusing to order the return of the imprisoned Swank to testify is therefore unconvincing.
 {¶ 68} Defendant's contention that the trial court erred by refusing to order the return of the imprisoned Michael Gordon to testify on defendant's behalf is also unconvincing. At trial, defense counsel informed the court:
Michael Gordon, if the court recalls, is a federal prisoner. As of our pretrial hearing he was in federal prison in Atlanta. He's now actually been moved, I understand to Pennsylvania, but he's still a federal prisoner.
We have not sought to bring him back partly because I don't think that effort would have been successful. But more importantly, I've talked to his attorney who is handling his appeal of his convictions in the related case to this, the Daniel Cole homicide. Mr. Gordon did not testify at his trial. He has an appeal pending and expects to get a retrial or is hopeful of that. He retains his Fifth Amendment rights. If he were here, he would decline to testify anyway. So I saw no purpose in expending an effort to try and get someone back who wasn't going to testify.
(Tr. Vol. IV, at 495-496.)
 {¶ 69} Because defense counsel believed Gordon would assert hisFifth Amendment right against self-incrimination, as a matter of trial strategy, defense counsel declined to call Michael Gordon as a witness on behalf of defendant. Defendant's assertion that the trial court erred when it failed to order the return of the imprisoned Gordon is therefore not persuasive. See, also, State v. Kirk (1995), 72 Ohio St.3d 564, paragraph one of the syllabus, distinguishing and limiting, Cooper,
supra.
 {¶ 70} Defendant's sixth assignment of error also asserts the trial court erred when it failed to admit into evidence a letter that was written by Michael Gordon to Aaron Swank while Gordon and Swank were imprisoned in the Franklin County Corrections Center. At trial, defendant argued the letter was admissible under the Ohio Rules of Evidence as a statement against interest. (Tr. Vol. IV, at 497-498.)
 {¶ 71} In this letter, Gordon, in relevant part, stated:
I heard they indicted some guy named Joe also!!! My attorney ask [sic] me if I knew him, but I don't know no one with that name and I definitely haven't ever in my life seen him before. I don't know what's up with that, maybe they might've found out the truth (that I had nothing to do with this) and might be planning to drop my case before it goes to trial * * *.
(Letter from Gordon to Swank dated January 15, 2003.)
 {¶ 72} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 provides:
Hearsay is not admissible except provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.
 {¶ 73} Pursuant to Evid.R. 804(B)(3),[11] a statement against interest is not excluded by the hearsay rule if a declarant is unavailable as a witness. Evid.R. 804(B)(3) provides:
A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
 {¶ 74} Whether to admit the hearsay statement of an unavailable declarant pursuant to Evid.R. 804(B)(3) is within the discretion of a trial court. State v. Sumlin (1994), 69 Ohio St.3d 105, syllabus.
 {¶ 75} In State v. Ducey, Franklin App. No. 03AP-944, 2004-Ohio-3833, this court stated:
"In Chambers v. Mississippi (1973), 410 U.S. 284, 93 S.Ct. 1038,35 L.Ed.2d 297, the United States Supreme Court listed four factors which indicate that statements against the penal interest of the declarant are sufficiently trustworthy to be admitted into evidence. Those factors are (1) the spontaneity of the statements, (2) whether the statements are corroborated by other evidence, (3) whether the statements are self-incriminating and against penal interest, and (4) whether the declarant was available for cross-examination by the opposing party. Id.
at 300-301, 93 S.Ct. at 1048-1049, 35 L.Ed.2d at 311-312. The Ohio Supreme Court has adopted these factors for determining admissibility pursuant to Evid.R. 804. State v. Sumlin (1994), 69 Ohio St.3d105, 110, 630 N.E.2d 681, 685."
Id. at ¶ 34, quoting In re Carter (1997), 123 Ohio App.3d 532, 540.
 {¶ 76} Here, as a matter of trial strategy, defendant did not call Gordon to testify on his behalf because defendant anticipated that Gordon would invoke his privilege against self-incrimination under theFifth Amendment. Having failed to call Gordon as a witness, we therefore cannot conclude that for purposes of Evid.R. 804(B)(3) Gordon was unavailable as required under Evid.R. 804. See, e.g., State v. Burke (1995),73 Ohio St.3d 399, 403, certiorari denied (1996), 517 U.S. 1112,116 S.Ct. 1336 (observing that
"[i]n order for Evid.R. 804 hearsay exceptions to apply, the declarant must be deemed unavailable. Although [declarant] invoked his right against self-incrimination at the sentencing hearing, [declarant] was not called as a witness during the guilt phase and cannot be said to have been unavailable during that phase. Thus, [declarant's] statements were properly excluded").
 {¶ 77} Furthermore, even assuming arguendo that it can be said that Gordon was unavailable for purposes of Evid.R. 804(B)(3), we find the trial court did not abuse its discretion by refusing to admit Gordon's letter pursuant to Evid.R. 804(B)(3). Here, Gordon's letter is not self-incriminating or against his penal interest; rather, Gordon's letter asserted his innocence. See, generally, Evid.R. 804(B)(3).
 {¶ 78} Consequently, we conclude that the trial court did not act unreasonably, arbitrarily, or unconscionably by refusing to admit Gordon's letter into evidence.
 {¶ 79} Accordingly, defendant's sixth assignment of error is overruled.
 {¶ 80} Having overruled all six of defendant's assignments of error, we therefore affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Lazarus, JJ., concur.
[1] Depo. of Krista Stumbaugh, at 13. (Videotaped deposition of Krista Stumbaugh was played at trial due to Stumbaugh's unavailability to testify at trial.)
[2] Tr. Vol. II, at 208, 232.
[3] Id. at 206.
[4] Id. at 144.
[5] Id. at 268.
[6] Id. at 269.
[7] Since April 1997 when the felonious assault of Cole occurred, R.C.2903.11 has been amended twice. See Am.S.B. No. 142, effective February 3, 2000; Am.H.B. No. 100, effective March 23, 2000.
[8] Tr. Vol. I, at 100.
[9] Tr. Vol. III, at 330-331.
[10] Since the death of Cole in April 1997, R.C. 2903.04 has been amended twice. See Am.Sub.S.B. No. 107, effective March 23, 2000; Am.Sub.S.B. No. 123, effective January 1, 2004.
[11] Evid.R. 804 was amended effective July 1, 2001, after the crimes against Cole occurred. See, generally, Evid.R. 1102(L). Division (B)(3) of Evid.R. 804 was unaffected by the 2001 amendments.