[Cite as *State v. Darazim*, 2014-Ohio-5304.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellee,               :

                                       No. 14AP-203

v.                                               :      (C.P.C. No. 13CR-2706)

Ghassan Darazim,                                 :      (REGULAR CALENDAR)

      Defendant-Appellant.             :

---

D E C I S I O N

Rendered on November 28, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*David K. Greer*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1}  Defendant-appellant, Ghassan Darazim, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty of five counts of receiving stolen property and sentencing him to two years of community control.  Because the trial court did not abuse its discretion in its evidentiary rulings, but there was insufficient evidence to support a finding of value within the fifth-degree felony range as to two of the transactions, we affirm in part and reverse in part.

**I. Facts and Procedural History**

{¶ 2}  By indictment filed May 20, 2013, plaintiff-appellee, the State of Ohio, charged appellant with five counts of receiving stolen property in violation of R.C. 2913.51, all felonies of the fifth degree.  The indictment related to five transactions that occurred in the store appellant owns between April and August 2012.  Appellant entered a not guilty plea as to all counts.

{¶ 3}   According to the indictment, the value of the property involved in each count was between $500 and $5,000 or the amount required to bring the offense into the felony range for the then-current version of R.C. 2913.51.  Subsequent to the indictment, the General Assembly enacted 2013 Am.Sub.H.B. No. 51 ("H.B. No. 51"), effective July 1, 2013, which increased the valuation level for fifth-degree felony eligibility to between $1,000 and $7,500.  The state tried appellant based on the new valuation levels contained in H.B. No. 51 but did not amend the indictment.

{¶ 4}   At a bench trial on February 10, 2014, the state presented the testimony of Richard Curry, a retired sergeant formerly with the Columbus Division of Police.  While he was still an active police sergeant, Curry was assigned to the property recovery unit and was in charge of the investigation into Southeast Fish and Produce, the store appellant owns.  The investigation involved using informants to take bait property donated from retail stores, and sometimes property from the police evidence room, into appellant's store and represent that the property had been stolen to see if appellant would then purchase the bait property.  Most of the bait property was Similac infant formula donated by Kroger and cigarettes donated by CVS, but Curry also used other merchandise including bottles of liquor and Red Bull energy drinks.

{¶ 5}   Curry testified he recruited Angelia Conklin as an informant after she had been caught stealing from Kroger.  Conklin was compensated for her work as an informant from the Columbus police evidence fund.  She would receive $40 for small value sales and $60 for felony-level sales, meaning sales in which she would sell at least $1,000 of merchandise.  When Curry first began his investigation, he would drive Conklin to appellant's store with the bait property, but Curry became concerned that appellant would become suspicious if Curry was always waiting outside the store for Conklin.  As a result, Curry adjusted the procedure so that Conklin would drive herself to appellant's store and Curry would follow her and watch the transaction from his car across the street.  Curry would meet Conklin prior to the transactions five or six blocks away to give her the bait property, follow her to the store, and then meet her again to retrieve the cash Conklin received from the transaction and the tape recorders used to record the transaction.  Curry never actually entered the store with Conklin, but on several occasions another informant accompanied Conklin.

{¶ 6} Curry then testified regarding the five specific transactions referenced in the indictment. The April 10, 2012 transaction involved 72 cans of Similac with a total value of $1,035.36. To arrive at the valuation, Curry explained he multiplied the individual price of a can of Similac at Kroger, $14.38, by 72, the number of cans sold. The state introduced a photograph of the Similac on the shelf of Kroger showing a retail sticker price of $14.38. Curry testified Conklin took the Similac into appellant's store on April 10, 2012 and returned with $120 cash.

{¶ 7} The next transaction occurred on May 12, 2012, and Curry testified he again used Conklin to sell bait property to appellant. This transaction involved 73 cans of Similac with a total value of $1,049.74. Curry used the same retail price of Similac that he used from the April 1o, 2012 transaction to arrive at this valuation. Conklin drove herself to appellant's store for this transaction and emerged with $100.

{¶ 8} The next transaction Curry described occurred on August 7, 2012. This transaction involved 72 cans of Similac for a total value of $1,035.36, again using the retail value from the sticker price at Kroger. After this transaction, Conklin left appellant's store with $220.

{¶ 9} The fourth transaction occurred on August 9, 2012. Curry testified this transaction involved bait cartons of cigarettes donated by CVS as well as loose packs of cigarettes from the Columbus police property room. Curry testified the total value of the cigarettes was $1,056.21. Curry explained that Conklin took the cigarettes to appellant's store and sold them to appellant, returning with $380.

{¶ 10} The fifth and final transaction contained in the indictment occurred August 10, 2012. Curry explained this transaction differed slightly because he already had a search warrant for appellant's store and had a SWAT team prepared to execute the search warrant as soon as the transaction was completed. This transaction involved 17 cartons of cigarettes, but Curry did not testify as to the specific value. He did agree it was "[t]he same as the day before," but he also agreed the transaction involved "[d]ifferent cigarettes" than those used in the August 9, 2012 transaction. (Tr. 41.) Curry testified Conklin took the cigarettes into the store and returned with $340. Curry testified the first time he entered appellant's store was after the August 10, 2012 transaction when he executed the search warrant. He stated he found some of the bait property Conklin had

sold to appellant, as well as "a verified stolen laptop." (Tr. 43.) Defense counsel objected to this testimony but the trial court overruled the objection. Curry further testified he found other merchandise from Big Lots and Family Dollar. At the time of the search warrant, the SWAT team detained four people, including appellant and appellant's wife.

{¶ 11} When the prosecution asked Curry about other sales of bait property between November 2011 and August 2012, defense counsel objected arguing that line of questioning was not relevant. The prosecution responded that "it clearly goes to [appellant's] knowledge and to his intent of what he's doing," and the trial court overruled the objection. (Tr. 50.) Curry then described other sales of bait property that occurred at appellant's store during that time frame, including misdemeanor-level sales of Red Bull and cigars and other smaller sales of Similac and bottles of liquor. In total, Curry testified there were about 15 other misdemeanor sales not the subject of this indictment.

{¶ 12} Conklin also testified. She explained that she began working for Curry after she was caught stealing from Kroger in 2011 and that she remembered the transactions from April 10, May 12, and August 7, 9, and 10, 2012. Conklin testified she engaged in numerous other undercover sales at appellant's store, and that she "[a]lways" represented the property as stolen to appellant. (Tr. 112.) On cross-examination, Conklin stated she made 95 percent of her sales directly to appellant but when she sold items to other people at appellant's store, they first telephoned appellant for his approval. Conklin also admitted although she had agreed not to engage in any criminal activity while she worked for Curry, she was arrested at least three times for stealing during the course of this investigation.

{¶ 13} At the close of evidence, the trial court returned its verdict, finding appellant guilty of all five counts as charged in the indictment. The trial court ordered appellant to serve a two-year period of community control, and it journalized its decision in a February 11, 2014 judgment entry. Appellant timely appeals.

## II. Assignments of Error

{¶ 14} Appellant assigns the following assignments of error for our review:

> [I.] The trial court abused its discretion in allowing evidence of numerous other acts regarding similar but uncharged conduct, and unrelated bad character, not within any legitimate exception to Evidence Rule 404(B).

[II.] The trial court denied appellant due process of law under the Fourteenth Amendment of the United States Constitution when it convicted him of five felonies when there was insufficient evidence of the essential element of value as of the time of offense of the purportedly stolen merchandise. Moreover, the trial court failed to return findings in its verdict as to value in each of the five counts, in violation of R.C. 2913.61(A).

## III. First Assignment of Error – Evidentiary Rulings

{¶ 15} In his first assignment of error, appellant asserts the trial court erred in allowing evidence of "other acts" that did not fall within a recognized exception contained in Evid.R. 404(B). More specifically, appellant argues the trial court abused its discretion when it allowed Curry's testimony regarding the other misdemeanor transactions at appellant's store and other purportedly stolen property not subject of the indictment found in appellant's store during the execution of the search warrant.

{¶ 16} A trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices the affected party. *Andrew v. Power Marketing Direct, Inc.*, 10th Dist. No. 11AP-603, 2012-Ohio-4371, ¶ 73, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001); *State v. Barnes*, 94 Ohio St.3d 21, 23 (2002) (noting a trial court abuses its discretion when it acts "unreasonably, arbitrarily, or unconscionably").

{¶ 17} In pertinent part, Evid.R. 404(B) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 18} The listed exceptions in Evid.R. 404(B) are not exclusive. *State v. Platt*, 10th Dist. No. 03AP-1148, 2005-Ohio-705, ¶ 42, quoting *State v. Smith*, 49 Ohio St.3d 137, 140 (1990) (stating "Evid.R. 404(B) permits 'other acts' evidence for 'other purposes' including but not limited to certain enumerated issues"). "Generally, evidence of other acts is admissible if it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character, Evid.R. 404(B), it is relevant

when offered for that purpose, Evid.R. 401, and the danger of unfair prejudice does not substantially outweigh its probative value, Evid.R. 403." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 68, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20.

{¶ 19} Appellant argues the "other acts" evidence here was offered only to show appellant had a propensity to commit these crimes. The state responds, however, that the "other acts" evidence was relevant and admissible to prove appellant's identity, knowledge, and intent.

{¶ 20} "Evidence of crimes may be introduced to prove identity if the defendant ' "committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes." ' " *State v. Sullivan*, 10th Dist. No. 10AP-997, 2011-Ohio-6384, ¶ 25, quoting *State v. Shedrick*, 61 Ohio St.3d 331, 337 (1991), quoting *State v. Curry*, 43 Ohio St.2d 66, 73 (1975). Appellant argues identity was not an issue in this case because there was no dispute that appellant owned the store where the transactions occurred. During closing argument, however, defense counsel stated the only evidence that appellant was even in the store on any of the relevant dates was the testimony of Conklin, and the state "presented nothing to corroborate that my client was even in the store when [Conklin] claims to have sold to him." (Tr. 139.) Though appellant now asserts this was a credibility argument, it could also reasonably be construed as an argument that appellant's identity as the perpetrator was an issue.

{¶ 21} Given the broad discretion afforded to trial courts in evidentiary rulings, we conclude the trial court here did not abuse its discretion in admitting the "other acts" evidence as it was offered for a purpose other than to prove the character of appellant and show conformity with that character, it is relevant to show identity, and the danger of undue prejudice does not substantially outweigh its probative value. Having determined the trial court did not abuse its discretion in admitting the "other acts" evidence in order to show identity, we need not address whether it was also proper in order to show knowledge and intent. Accordingly, we overrule appellant's first assignment of error.

**IV. Second Assignment of Error – Sufficiency of the Evidence**

{¶ 22} In his second assignment of error, appellant argues there was insufficient evidence to support his convictions. Additionally, appellant asserts the trial court erred in failing to return findings as to value for each of the five counts in its verdict.

## A. Sufficiency of the Evidence

{¶ 23} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 24} To convict a defendant of receiving stolen property, the state is required to prove that the defendant received, retained or disposed of property of another, knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense. R.C. 2913.51(A); *State v. Conway*, 10th Dist. No. 03AP-585, 2004-Ohio-1222, ¶ 18, citing *State v. Cunningham*, 10th Dist. No. 01AP-1375, 2002-Ohio-4312, ¶ 7. Additionally, to bring the offense into the fifth-degree felony range, the state is required to prove that the value of the property is between $1,000 and $7,500. R.C. 2913.51(C).

{¶ 25} Appellant asserts the state presented insufficient evidence of the value of the property represented as stolen in each of the five transactions. We discuss the evidence as it relates to the Similac transactions separately from the evidence that relates to the cigarette transactions.

### 1. Similac – April 10, May 12, and August 7, 2012

{¶ 26} Appellant first argues there was insufficient evidence of the value of the Similac sold to appellant on April 10, May 12, and August 7, 2012. More specifically, appellant argues the state was required to prove the value of the Similac at the time of each transaction and it was error to allow the state to use the same valuation of an individual can of Similac for each of the three transactions.

{¶ 27} The state's evidence establishing the value of the Similac came from Curry's testimony. Curry authenticated a photograph he had taken of Similac on the shelf at a

Kroger store showing a retail price of $14.38 for one can of Similac. Curry then used that same value and multiplied it by the number of cans sold during the April 10, May 12, and August 7, 2012 transactions. The photograph was taken in November 2011, and Curry stated he "stuck with the [$14.38] pretty much all the way through the case." (Tr. 80.)

{¶ 28} Pursuant to R.C. 2913.61(A), in determining the value of the stolen property, "the jury or court trying the accused shall determine the value of the property or services as of the time of the offense." Appellant argues this statute means the state had to prove the value of the Similac on the day of each offense. However, appellant points to no authority, case law or otherwise, that the evidence of value used by the state for the Similac charges was insufficient to prove the value of the Similac on each of the transaction dates. Nor does appellant present evidence of any lesser valuation that would have moved the sale of Similac out of the felony range. This speculative argument is not enough to render the convictions regarding the Similac transactions against the sufficiency of the evidence.

{¶ 29} We agree with the state that appellant's argument in this regard is really a credibility argument, and we are mindful that "[i]n determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Smith*, 10th Dist. No. 08AP-736, 2009-Ohio-2166, ¶ 26. The evidence here established Curry determined the value of the Similac when he started the investigation into appellant's store. We find this was sufficient evidence of value for the April 10, May 12, and August 7, 2012 convictions.

### 2. Cigarettes – August 9 and 10, 2012

{¶ 30} Appellant further argues the state presented insufficient evidence of the value of the cigarettes used in the August 9 and 10, 2012 transactions.

{¶ 31} Regarding the August 9, 2012 transaction, Curry testified that Conklin sold to appellant 17 cartons and an unspecified number of loose packs of cigarettes. When asked what the value of the cigarettes was, Curry answered "[t]he 17 cartons plus the loose packs, the total value was $1,056.21." (Tr. 38.)

{¶ 32} On cross-examination, defense counsel asked Curry how he arrived at the valuation for the cigarettes. Curry testified that CVS "would scan [the cigarettes] through

the register and print out what the price was," and he stated that the price was different for each brand of cigarette. (Tr. 74.) Appellant argues Curry erroneously used hearsay to arrive at the value of the cigarettes because Curry did not have personal knowledge of the value, and, therefore, the trial court erred in deeming his testimony sufficient evidence for a conviction on the August 9, 2012 transaction. In other words, appellant argues that because the state did not introduce the print-outs from CVS to establish the value of the cigarettes, Curry's testimony was based on hearsay. A statement is inadmissible hearsay when it is an out-of-court statement offered for the truth of the matter asserted. Evid.R. 801(C) and 802.

{¶ 33} First, we are mindful that "[i]n general, the admission or exclusion of evidence, 'including evidence relating to the value of stolen property,' lies within the sound discretion of the trial court." *State v. Bartolomeo*, 10th Dist. No. 08AP-969, 2009-Ohio-3086, ¶ 24, quoting *State v. Cook*, 12th Dist. No. CA87-04-009 (Sept. 8, 1987), citing *Schaffter v. Ward*, 17 Ohio St.3d 79, 80 (1985). Secondly, we note appellant did not object to Curry's testimony regarding valuation as hearsay during the trial. "Where no objection is raised to hearsay evidence, it may be considered by the trier of fact for whatever probative value it may have," and an appellate court can review the admission of that evidence only under the plain error analysis. *State v. Scott*, 10th Dist. No. 05AP-1144, 2006-Ohio-4981, ¶ 19, 21, citing *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 208 (1979), citing *State v. Petro*, 148 Ohio St. 473 (1947), paragraph eight of the syllabus. An appellate court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 139.

{¶ 34} For an error to be a "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *Barnes* at 27.

{¶ 35} As a general rule, inadmissible hearsay cannot be used to determine the value of stolen property. *State v. Massey*, 10th Dist. No. 99AP-1355 (Nov. 28, 2000);

*State v. Boczar*, 11th Dist. No. 2007-A-0034, 2008-Ohio-834, ¶ 36 (deputy's testimony that the insurance company paid between $500 and $5,000 on the victim's claim for the stolen property is inadmissible hearsay), citing *State v. Reese*, 165 Ohio App.3d 21, 2005-Ohio-7075, ¶ 28 (7th Dist.) (victim's testimony that her mother told her that her father had paid $3,500 for a ring was inadmissible hearsay and was insufficient to establish the value of the ring).

{¶ 36} Curry testified that he received information from CVS regarding the retail price of each brand of cigarette and that CVS would print out the price through the store's register. The state did not produce at trial the retail receipt that Curry used to form his valuation determination. Had the receipt been offered into evidence, it may have qualified for the business records exception to hearsay contained in Evid.R. 803(6). However, because the state failed to either offer the receipt into evidence or present a proper foundation witness who would be able to authenticate the receipt as a legitimate business record, Curry's testimony regarding the information contained in the CVS receipt amounts to inadmissible hearsay. *Massey* (concluding that the testimony of a security manager from a retail store as to the value of two stolen computers was inadmissible hearsay where the security manager had asked the Information Technology help desk for a copy of the purchase orders for the computers and then testified as to what the purchase order stated; and even though the purchase order was admitted into evidence, the security manager was not the custodian of the records or an otherwise qualified witness to provide foundation under Evid.R. 901(B)(10)).

{¶ 37} Because the only evidence offered to establish the value of the cigarettes sold during the August 9, 2012 transaction was impermissible hearsay, we conclude it was error for the trial court to rely on this evidence. We further conclude this error amounts to plain error because, without Curry's testimony regarding the value of the cigarettes, there was no other evidence in the record to establish that the sale of cigarettes on August 9, 2012 was in the fifth-degree felony range. *See, e.g.*, *State v. Ray*, 8th Dist. No. 92749, 2010-Ohio-513, ¶ 31 (finding plain error in the admission of a sergeant's testimony and an ATF report because both were inadmissible hearsay, and the testimony and report were the only evidence offered to support that the gun at issue was stolen property, a necessary element to convict appellant of receiving stolen property); *State v. Iverson*, 8th

Dist. No. 85593, 2005-Ohio-6098, ¶ 18 (finding plain error where the evidence offered to support appellant's conviction for carrying a concealed weapon was hearsay and "but for this evidence, there was no independent evidence offered regarding the weapon's concealment or its operability").  Accordingly, we agree with appellant that there was insufficient evidence to support a finding of value that would bring appellant's receiving stolen property conviction for the August 9, 2012 transaction into the fifth-degree felony range.

{¶ 38} We similarly agree with appellant that there is insufficient evidence to establish the value of the cigarettes sold during the August 10, 2012 transaction.  Curry described the property sold on August 10, 2012 as 17 cartons of cigarettes, but he noted the cigarettes were different brands than those sold on August 9, 2012.  There was no testimony that the sale involved any loose packs of cigarettes as was the case on August 9, 2012, and exhibit No. 5-1, which corresponds to the August 10, 2012 sale, shows only 17 cartons of cigarettes and no loose packs.  The prosecutor never asked Curry the value of the cigarettes sold on August 10, 2012.  There simply is no evidence in the record on the issue of value of the August 10, 2012 transaction.  *See Massey* (noting "[s]ome evidence of value, albeit minimal, must be presented to the jury to establish value").

{¶ 39} The state argues that the evidence of the value of the cigarettes sold on August 9, 2012 is circumstantial evidence of the value of the cigarettes sold on August 10, 2012.  Even setting aside the hearsay problem we identified above with the evidence presented for the August 9, 2012 transaction, we do not agree with the state.  Given that Curry testified that each brand of cigarettes had different prices, that the brands sold on August 9, 2012 differed from those sold on August 10, 2012, and that the two transactions involved different amounts of cigarettes, the evidence used to establish the value of the cigarettes sold on August 9, 2012 is not sufficient to establish the value of the cigarettes sold on August 10, 2012.  Indeed, Curry testified on cross-examination that he would add bottles of liquor or "the single packs of cigarettes" to make sure the total value of any sale was over $1,000 to bring the transaction into the felony range, suggesting the presence of the loose packs was critical to the overall value of the transaction and not inconsequential. (Tr. 66.)  Therefore, we conclude the state did not meet its burden of establishing the

value of the cigarettes sold on August 10, 2012 necessary for proving fifth-degree felony receiving stolen property.

## B. Findings of Value

{¶ 40} Lastly, appellant argues the trial court erred in returning a verdict that did not contain findings of value for each count of receiving stolen property. Instead, the trial court rendered a general verdict finding appellant guilty "as he stands charged in the Indictment." (R. 72.) Appellant asserts this general verdict does not satisfy the statutory requirement that a court make specific findings of value for cases involving theft offenses.

{¶ 41} Pursuant to R.C. 2913.61(A), "the jury or court trying the accused shall determine the value of the property or services as of the time of the offense and, if a guilty verdict is returned, shall return the finding of value as part of the verdict." The statute recognizes that the court need not make a specific finding of value, just a finding that the value was within a certain range to correspond with the degree of the offense. The state notes appellant did not object at trial to the verdict form and is thus limited to plain error review on appeal.

{¶ 42} In *State v. Caldwell*, 10th Dist. No. 99AP-1107 (Nov. 16, 2000), the verdict form read, "[w]e the Jury, being duly impaneled and sworn in this case, find the Defendant * * * Guilty of Receiving Stolen Property as charged in Count One of the Indictment." The judgment entry stated the jury found the defendant guilty of R.C. 2913.51(A) and stated the offense was a felony of the fifth degree, but the verdict form did not state the degree of the offense or include a finding of value. We concluded that because the indictment clearly alleged the value of the property was within the fifth-degree felony range, the verdict "incorporated the charge as stated in the indictment," the evidence indicated the value was within that range, and the defendant did not object at trial to the form of the verdict, then "any failure of the verdict form to comply strictly with R.C. 2913.61(A) is not prejudicial error." *Id.* Accord *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 19 (concluding that where the indictment charged the defendant with possession of cocaine, the state provided evidence that he possessed cocaine, and the jury returned its verdict on the only verdict form submitted to it reflecting "a finding of guilty *as charged in Count Two of the indictment*," there was no plain error in the trial court using that verdict form without specifying a finding that defendant specifically possessed

cocaine where the defendant could not show that, but for the use of the verdict form, the outcome of the trial would have been different). (Emphasis sic.)

{¶ 43} Here, the indictment clearly charged appellant with five counts of receiving stolen property, all felonies of the fifth degree. As we noted above, the indictment contained the pre-H.B. No. 51 felony value range of $500 to $5,000. Appellant suggests that because the indictment was never amended, the trial court's verdict of "guilty as charged in the indictment" does not substantially comply with R.C. 2913.61(A) because it does not reflect the value range of $1,000 to $7,500 now required for a fifth-degree felony. However, appellant never objected to the indictment or requested the indictment be amended to reflect the change in the law. Further, the record and the parties' briefs indicate there was no dispute that by the time of trial, the prosecution was proceeding under the new values established by H.B. No. 51. Appellant cites no authority indicating the trial court was required to amend the indictment to reflect the new values before proceeding to trial. Thus, appellant knew the state intended to prove his guilt of fifth-degree felony receiving stolen property under the new value levels established by H.B. No. 51. *Id.* at ¶ 18.

{¶ 44} With the exception of the August 9 and 10, 2012 transactions, as we discussed above, the state presented evidence that the value of the property involved in each count was more than $1,000 as required to make the offense a fifth-degree felony. As in *Caldwell*, appellant did not object to the verdict form, and the trial court returned a verdict finding appellant guilty as charged in the indictment. Thus, pursuant to *Caldwell*, this was substantial compliance with the requirements of R.C. 2913.61(A), and appellant does not demonstrate plain error from the trial court's verdict.

{¶ 45} Because the state failed to meet its burden of establishing the value of the cigarettes sold on August 9 and 10, 2012 necessary for proving fifth-degree felony receiving stolen property, we sustain in part appellant's second assignment of error as it relates to the August 9 and 10, 2012 transactions. However, because value is not an actual element of the crime itself, this error does not mandate reversal of the conviction, but only a reduction in the degree of the offense. Accordingly, appellant's fifth-degree felony receiving stolen property convictions related to the August 9 and 10, 2012 transactions must be reduced to first-degree misdemeanors. *Reese* at ¶ 36; *Massey*; R.C. 2913.51(C).

**V. Disposition**

{¶ 46} Based on the foregoing reasons, the trial court did not abuse its discretion in its evidentiary rulings, and there was sufficient evidence to support three of the convictions for receiving stolen property. However, there was insufficient evidence as to the value of the cigarettes involved in the August 9 and 10, 2012 transactions. Having overruled appellant's first assignment of error and sustained in part appellant's second assignment of error to the extent indicated, we affirm in part and reverse in part the judgment of the trial court, and we remand this matter to the trial court for resentencing on the misdemeanor receiving stolen property offenses.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

TYACK and O'GRADY, JJ., concur.