The STATE of Ohio, Appellee,

v.

REESE, Appellant.

[Cite as *State v. Reese*, 165 Ohio App.3d 21, 2005-Ohio-7075.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04 MA 237.

Decided Dec. 15, 2005.

24

Paul J. Gains, Mahoning County Prosecuting Attorney, and Rhys B. Cartwright–Jones, Assistant Prosecuting Attorney, for appellee.

Lynn Maro, for appellant.

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Antwuan Reese, appeals the decision of the Mahoning County Court of Common Pleas, finding him guilty of one count of theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree, and sentencing him to the maximum prison term of one year to be served consecutively to any sentence imposed for his federal probation violation. Because the state did not provide sufficient evidence to prove that the ring allegedly stolen by Reese had a value greater than $500, Reese's conviction on the fifth-degree felony charge is reduced to a first-degree misdemeanor, his sentence is reversed, and this cause is remanded to the trial court for resentencing.

{¶ 2} In May 2004, Gena Schiff placed an ad in the Youngstown Vindicator to sell for $1,500 a ring that she had been given by her mother. Schiff was told by her mother, before she died seven years ago, that the ring was purchased by Schiff's father "a lot of years ago" for $3,500. Schiff received a call from an allegedly interested buyer and went with her fiancé to meet the man. When they arrived at the address given to her by the man on the phone, they found a man

sitting on the front porch wearing grey sweat pants. The man claimed to be injured, was using crutches, and had his ankle wrapped with an ace bandage.

{¶ 3} After discussing the ring for over an hour, Schiff and her fiancé decided to leave. At that point, the man had the ring in his hand. He picked up his crutches and fled with the ring. Schiff called 911 from her cell phone and gave to the dispatcher a description of a black man with a beard. The Boardman police began searching the area around Market Street and State Route 224 based on Schiff's location.

{¶ 4} Officer Gocala saw Reese, a black man with a beard, wearing red shorts and a white T-shirt, walking in the parking lot of the Home Depot. Reese ran when the officer approached him and was apprehended by the police a few blocks away. Shortly thereafter, a bag was located in a nearby field containing grey sweat pants, a baseball cap, a cell phone, and a can of paint. The ring was never found. However, after Reese was arrested, the police found a copy of Schiff's Vindicator ad in one of his pockets, with the ad for the ring circled.

{¶ 5} After Reese's arrest, Schiff failed to identify him as the person who stole her ring. The only other witness to the crime, Schiff's fiancé, was never asked to look at a photo array or a lineup prior to trial. Nevertheless, Reese was brought to trial and was found guilty of one count of theft by a jury. He was then sentenced by the trial court to one year in prison to be served consecutively to any sentence imposed for his federal probation violation.

{¶ 6} As one of four assignments of error, Reese asserts:

{¶ 7} "The trial court erred in permitting hearsay evidence to establish value of the property taken in violation of the United States Constitution Amend. VI and XIV and Ohio Constitution Art. 1 § 10."

{¶ 8} Reese contends that the trial court erred, not only by violating his right to confront his accusers, but by permitting a conviction to stand when one of its elements, namely the value of the stolen ring, was supported by nothing more than inadmissible hearsay. Based upon the holding of a recent United States Supreme Court case, the Confrontation Clause can be violated only when *testimonial* hearsay is improperly admitted. The evidence in this case was *nontestimonial* hearsay. However, Reese correctly asserts that the state did not present sufficient evidence as to the value of the stolen item, as the only evidence presented is inadmissible hearsay.

## Confrontation Clause

{¶ 9} Reese claims that the admission of an out-of-court statement regarding the value of the ring violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. Reese is correct that the

Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." However, in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court explained that whether or not a statement was testimonial in nature would be determinative of what constituted a "witness" for purposes of the Confrontation Clause.

■ {¶ 10} "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does [*Ohio v.*] *Roberts* [ (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington* (2004), 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 11} The fundamental question we must decide, then, is whether a particular statement is testimonial or nontestimonial. Although the *Crawford* court explicitly declined the opportunity to provide a precise definition of "testimonial," it did offer three formulations for such determination, without expressly adopting any. See id. at 67–69, 124 S.Ct. 1354, 158 L.Ed.2d 177. They have been summarized by the First Circuit Court of Appeals as follows:

{¶ 12} "In the first, testimonial statements consist of 'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.'

{¶ 13} "The second formulation described testimonial statements as consisting of 'extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.' * * * *White v. Illinois* (1992), 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848.

{¶ 14} "Finally, the third explained that testimonial statements are those 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' * * *

{¶ 15} "While the Court declined to settle on a single formulation, it noted that, '[w]hatever else the term [testimonial] covers, it applies * * * to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. These are the modern [practices with closest kinship to the] abuses at which the Confrontation Clause was directed.'" (Paragraph breaks added.) *Horton v. Allen* (C.A.1, 2004), 370 F.3d 75, 84, quoting *Crawford*, 541 U.S. 36, 52, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177, fn. 10.

{¶ 16} In the present case, Reese objected to the statement made by Schiff that Schiff had been told by her mother, before she died seven years ago, that the ring was purchased by Schiff's father "a lot of years ago" for $3,500. Clearly, Schiff's mother would not have told her daughter the value of her ring in contemplation of her statement's use at a later trial, nor was it formalized into any type of testimonial material. Thus, the statement made by Schiff's mother was not testimonial in nature and should not be subject to a Confrontation Clause analysis. However, the remainder of Reese's argument is meritorious.

Hearsay

{¶ 17} Although Reese's attorney objected twice to the testimony regarding the value of the ring, the trial court allowed the testimony to be given, explaining that it was part of a family history. It appears that the trial court was referring to the hearsay exception found in Evid.R. 804(B)(4), a statement of personal family history, which is described as follows:

{¶ 18} "(a) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though the declarant had no means of acquiring personal knowledge of the matter stated; or (b) a statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared."

{¶ 19} This exception is clearly not intended to apply to the type of testimony that was given regarding the ring, as it includes only matters regarding how people are related to one another. Because no other hearsay exception applies to the type of testimony that was given, we must conclude that the trial court erred in admitting the hearsay evidence. We must now decide whether that was prejudicial error. For the sake of clarity, we will address whether the admission of this hearsay evidence was prejudicial in the context of Reese's next assignment of error. Reese claims:

{¶ 20} "The verdict reached by the jury was against the manifest weight of the evidence and was insufficient to support a finding of guilt thereby denying Appellant's Due Process rights as guaranteed by the United States Constitution Amend. XIV and right to a fair trial [sic] United States Constitution Amend. VI."

{¶ 21} In his assignment of error, Reese challenges both the weight and sufficiency of the evidence. As the Ohio Supreme Court has stated, arguments concerning the "sufficiency of the evidence" should not be confused with those addressing the "manifest weight of the evidence." See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, at paragraph two of the syllabus ("The

legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different").

{¶ 22} "Sufficiency of the evidence" is " 'a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' " Id. at 386, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273, 574 N.E.2d 492. Whether the evidence is legally sufficient is a question of law. Thompkins, 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶ 23} In contrast, when reviewing whether a conviction was against the manifest weight of the evidence, this court must "examine whether the evidence produced at trial 'attains the high degree of probative force and certainty required of a criminal conviction.' " State v. Tibbetts (2001), 92 Ohio St.3d 146, 163, 749 N.E.2d 226, quoting State v. Getsy (1998), 84 Ohio St.3d 180, 193, 702 N.E.2d 866. We therefore must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. " 'Weight is not a question of mathematics, but depends on its effect in inducing belief.' " Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) 1594.

## Sufficiency of the Evidence

{¶ 24} In this case, Reese challenges the amount of evidence supporting his conviction of theft. In order to convict Reese of theft as a fifth-degree felony, the jury had to find that the value of the stolen property received was $500 or more. R.C. 2913.51(C). R.C. 2913.61(D) provides the following criteria to value stolen property:

{¶ 25} "(1) The value of an heirloom, memento, collector's item, antique, museum piece, manuscript, document, record, or other thing that has intrinsic worth to its owner and that either is irreplaceable or is replaceable only on the expenditure of substantial time, effort, or money, is the amount that would compensate the owner for its loss.

{¶ 26} "(2) The value of personal effects and household goods, and of materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner, which property is not covered under division (D)(1) of this section and which retains substantial utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind and quality.

{¶ 27} "(3) The value of any real or personal property that is not covered under division (D)(1) or (2) of this section, and the value of services, is the fair market value of the property or services. As used in this section, 'fair market value' is the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act."

{¶ 28} The most direct testimony given about the value of the ring was the statement made by Schiff. However, we have already concluded that it was error for the trial court to have admitted that testimony, as it was hearsay that did not fall into any exception. The state claims that it was harmless error because there were other ways of determining the value of the ring. The state explains that the jury heard evidence that the ring was advertised in the Youngstown Vindicator for $1,500. And at the close of evidence, the trial court instructed the jury that if it found the piece of jewelry to be an heirloom, the value would be equal to the expenditure of time, effort, or money that would adequately compensate Schiff for her loss. Finally, the state suggests that the value could be implied, as Schiff testified it was a diamond-and-emerald ring. But there are several problems with the state's arguments.

{¶ 29} First, the state's use of the Vindicator advertisement as evidence of the ring's value is problematic, as the advertisement constitutes hearsay. Hearsay is an out-of-court statement offered in court to prove the truth of the matter. Evid.R. 801(C). A "statement" includes written publications such as newspaper articles. *Sykes v. Gen. Motors Corp.* 11th Dist. No. 2003–T–0007, 2003-Ohio-7217, 2003 WL 23097102. This advertisement does nothing more than echo Schiff's personal belief that this ring was worth a certain amount of money because her deceased mother told her so. Accordingly, we find that the advertisement, if used to prove the truth of the matter asserted, namely the value of the ring, is nothing more than unreliable, self-serving hearsay upon hearsay. Notably, that does not mean that the advertisement was improperly admitted for other purposes—for example, to prove that Reese was in fact the man who had met with Schiff, as he was in possession of the advertisement at the time of the alleged crime. However, as stated, the advertisement cannot be admitted to

show the value of the ring, as it is hearsay based upon hearsay. See *Dellick v. Eaton Corp.* (Feb. 9, 2005), 7th Dist. No. 03 MA 246, 2005 WL 351331.

{¶ 30} Even assuming that the advertisement was not hearsay, arguably, it could be used to demonstrate "fair market value" or the money consideration that a buyer would give and a seller would accept for property or services under R.C. 2913.61(D)(3). However, this assumes that the buyer is willing to buy and the seller is willing to sell. In this case, there is no buyer, only a thief, so there is no way to determine what someone would have actually paid for the ring in good faith.

{¶ 31} We liken this situation to someone's attempting to sell an item on eBay or at a garage sale. Although someone may expect to be offered substantial sums of money for something he is offering to sell, he will never know its true market value until someone starts placing good-faith bids on and offers to buy the item. Here, we have no evidence of what a good-faith purchaser would have paid for the ring. It is possible that someone may have offered $1,500 for the ring, but it is just as likely that Schiff would have received offers much lower than the requisite $500 required by the statute. We simply cannot allow a conviction to stand on mere speculation as to what someone might have paid for this ring. Accordingly, we conclude that section of the statute to be inapplicable to this case.

{¶ 32} Second, the jury could not have determined the value of the ring based on its being an heirloom, as there was no testimony that it was either irreplaceable or is replaceable only on the expenditure of substantial time, effort, or money. Notably, this piece of jewelry was never mentioned as being, let alone substantiated as being, an heirloom during trial. Thus, the state clearly did not meet its burden of proof under this version of the statute, let alone to support the jury instructions.

{¶ 33} Moreover, we find it counterintuitive to call something an heirloom when the owner is willing to sell it, especially considering the common usage of the word heirloom. We find it significant that Merriam–Webster Online has defined an heirloom as being either "1: a piece of property that descends to the heir as an inseparable part of an inheritance of real property" or "2: something of special value handed on from one generation to another." Clearly, a ring being sold in the local newspaper's classified section for less than half of what the owner claims it to be worth is not a heirloom by this standard or the legal standard as described in the statute.

{¶ 34} Finally, the state argues that the jury could have determined the value of the ring based upon the fact that it was a diamond-and-emerald ring. However, there was no testimony as to the carat weight of the stones in the ring, nor was anyone called to testify whether in fact it was a diamond-and-emerald

ring rather than synthetic material that looked like those stones, or for how much a comparable ring could have been sold. Once again, we recognize that this placed the jury in the position of speculating as to the value of this ring.

{¶ 35} This court cannot now say that it is proper to convict someone of a higher degree of theft based upon such little information regarding the value of a ring that the jury never even got to see. We find this especially true because the state failed to bring in a jeweler to testify as to what the value of the ring might have been or at the very least a ring that was comparable to the ring that was stolen. Because the state failed to meet its burden of establishing the value of the ring necessary for proving this degree of a theft offense, Reese's first assignment of error is meritorious.

{¶ 36} However, this error does not mandate the reversal of the conviction. It warrants only a reduction in the degree of the offense, as the value is not an actual element of the crime of theft. Reese's sentence is reversed, and this cause must now be remanded to the trial court for sentencing on the misdemeanor theft. See *State v. Holloman* (Sept. 14, 2001), 1st Dist. Nos. C–000866 and B–0007701, 2001 WL 1077950.

{¶ 37} Reese's final three assignments of error allege:

{¶ 38} "The trial court erred when it imposed a consecutive sentence without stating the necessary findings to support consecutive sentence."

{¶ 39} "The trial court violated Appellant's Sixth Amendment Rights when the trial court made specific factual findings when sentencing Appellant to prison, for more than the minimum sentence, when such factual findings must be made by a jury."

{¶ 40} "The verdict reached by the jury was against the manifest weight of the evidence that was insufficient to support a finding of guilty thereby denying Appellant's due process rights as guaranteed by the United States Constitution Amend. XIV and right to a fair trial United States Constitution Amend. VI."

{¶ 41} There is no need to address Reese's second, third, or fourth assignments of error, as the resolution of the first assignment of error has rendered them moot. Accordingly, Reese's conviction is modified, his sentence is reversed, and this cause is remanded to the trial court for resentencing on the misdemeanor theft.

Judgment reversed
and cause remanded.

VUKOVICH and WAITE, JJ., concur.