[Cite as *State v. Erichsen*, 2012-Ohio-137.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

       Plaintiff-Appellee

-vs-

COLIN M. ERICHSEN

       Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. John W. Wise, J.
Hon. Julie A. Edwards, J.

Case No. CT2011-0018

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. CR2010-0294 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 13, 2012 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| D. MICHAEL HADDOX<br>PROSECUTING ATTORNEY<br>RON WELCH<br>ASSISTANT PROSECUTOR<br>27 North Fifth Street<br>Zanesville, Ohio 43701 | DAVID A. SAMS<br>Box 40<br>West Jefferson, Ohio 43162 |

*Wise, J.*

**{¶1}** Defendant-Appellant Colin M. Erichsen appeals his sentence and convictions on three counts of receiving stolen property following a jury trial in the Muskingum County Court of Common Pleas.

**{¶2}** Plaintiff-Appellee is the State of Ohio.

## STATEMENT OF THE CASE AND FACTS

**{¶3}** Appellant Colin Erichsen was indicted by the Muskingum County Grand Jury on three (3) counts of Receiving Stolen Property, in violation of R.C. §2913.51.

**{¶4}** Count One concerned an Ohio State football helmet with players' autographs, an autographed Columbus Destroyer's jersey, and an Ohio State clothes basket, said property having a value of more than $500 but less than $5,000, a felony of the fifth degree.

**{¶5}** Count Two was dismissed by the State.

**{¶6}** Count Three concerned a 32-inch Samsung television, miscellaneous jewelry, miscellaneous ammunition, and one duffel bag, said property having a value of more than $500 but less than $5,000, a felony of the fifth degree.

**{¶7}** Count Four concerned a Glock 17, 9 millimeter semi-automatic handgun, a Smith and Wesson Airweight .38 caliber revolver, and a Ruger 10-22 rifle, a felony of the fourth degree.

**{¶8}** On March 22, 2011, a jury trial commenced in this matter.

**{¶9}** At trial, the State presented testimony from the two victims: Eric Stottsberry and Ryan Wise, and the investigating officers, among others. Appellant also testified in his own defense.

{¶10} Eric Stottsberry testified that his home had been broken into and that several items had been stolen, including a 2002 Ohio State University National Championship Helmet; a Columbus Destroyer's football jersey; a clothes hamper; and a gift card. (T. at 214-22). He testified that the helmet was a gift from his parents and they had paid $1,000 for it. (T. at 217). He valued the jersey at $250 to $300, but stated that he wasn't sure as to the actual value. (T. at 217). He stated that the hamper was worth $30 and the gift card was also worth $30 (T. at 217). All values were in terms of their purchase price. (T. at 219-220).

{¶11} Cross-examination as to replacement value at the time of trial was denied. (T. at 219-220).

{¶12} In support of Counts 3 and 4, victim Ryan Wise testified that his home had also been broken into and that several items had likewise been stolen, including a 9 mm Glock; a Smith .38; a television; a Smith & Wesson handbag; coins/coin cases; a pocket watch; another coin case for a silver dollar; handgun ammunition; a car title, social security card, birth certificates, marriage license, obituary memorial, driving certificate, a death certificate and a diploma. (T. at 221-224). He testified that he paid approximately $400 for the television, the coins were worth approximately $6,000 and the watch was probably worth $100. (T. at 225, 229). He further valued the Smith and Wesson handbag at $60. (T. at 225-226). Additionally, four boxes of ammunition valued at $11.95 per box were missing. (T. at 226).

{¶13} On March 22, 2011, the jury returned guilty verdicts on all counts.

{¶14} On April 25, 2011, the trial court merged all three counts and sentenced Appellant to eighteen (18) months incarceration.

{¶15} Defendant-Appellant now appeals, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶16} "I. THE INDICTMENT WAS STRUCTURALLY DEFICIENT IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

{¶17} "II. THE CONVICTION WAS BASED ON STRUCTURALLY INSUFFICIENT EVIDENCE AND WAS OTHEREWISE [SIC] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

{¶18} "III. STRUCTURAL ERROR IN AN EVIDENTIARY RULING DEPRIVED THE DEFENDANT-APPELANT [SIC] OF THE RIGHTS OF CONFRONTATION, TO PRESENT A DEFENSE AND TO A FAIR TRIAL IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

{¶19} "IV. THE JURY INSTRUCTIONS WERE STRUCTURALLY ERRONEOUS AND ALLOWED/REQUIRED A GUILTY VERDICT BASED ON STRUCTURALLY INSUFFICIENT EVIDENCE IN VIOLATON [SIC] OF THE STATE AND FEDERAL CONSTITUTIONS

{¶20} "V. DEFENDANT-APPELLANT WAS DENIED THE EFFECIVE [SIC] ASSISTANCE OF COUNSEL IN VIOLATION OF THE STATE/FEDERAL CONSTITUTIONS

{¶21} "VI. THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS BY STRUCTURALLY CUMULATIVE ERROR IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTUTIONS [SIC]."

**I.**

{¶22} In his first assignment of error, Appellant argues that his indictment was structurally deficient. We disagree.

{¶23} More specifically, Appellant argues that that element of "recklessness" was not contained in the indictment and therefore such indictment was deficient. Appellant also argues that the State failed to include the firearm element in Count Four.

{¶24} Receiving Stolen Property, R.C.§ 2913.51(A) provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." This section sets forth "knowing" as the required mens rea of receiving stolen property. The State's indictment tracks the exact language of R.C. §2913.51. Therefore, the mens rea element necessarily is included in an indictment for this offense

{¶25} Further, Count Four states that Appellant "did knowingly receive, retain, or dispose of property, to-wit: (1) Glock 17 .9mm semi automatic handung [sic], one (1) Smith and Wesson Airweight .38 caliber revolver, and one (1) Ruger 10-22 Rifle, of another, to wit, Ryan Wise, knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense, said property being a firearm or dangerous ordnance as defined on Section 2923.11 of the Revised Code."

{¶26} As the above count did in fact contain the firearm element, we find Appellant's first assignment of error not well-taken and hereby overrule same.

**II.**

**{¶27}** In his second assignment of error, Appellant argues that his conviction was against the manifest weight and sufficiency of the evidence. We disagree.

**{¶28}** The function of an appellate court on review is to assess the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. In making this determination, a reviewing court must view the evidence in the light most favorable to the prosecution. *Id.; State v. Feliciano* (1996), 115 Ohio App.3d 646, 652, 685 N.E.2d 1307, 1310-1311.

**{¶29}** While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest-weight challenge questions whether the state has met its burden of persuasion. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541, 548-549 (Cook, J., concurring). In making this determination, we do not view the evidence in the light most favorable to the prosecution. Instead, we must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the Trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* supra, 78 Ohio St.3d at 387, 678 N.E.2d 541. (Quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins,* supra. In *State v. Thompkins,* supra the Ohio Supreme Court further held "[t]o reverse a judgment of a

trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." 78 Ohio St.3d 380, 678 N.E.2d 541 at paragraph three of the syllabus.

{¶30} In this case, Appellant was convicted of three counts of Receiving Stolen Property. The elements of receiving stolen property are set forth in R.C. 2913.51(A), which provides in pertinent part:

{¶31} "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

{¶32} "(C) Whoever violates that section is guilty of receiving stolen property. Except as otherwise provided in this division, receiving stolen property is a misdemeanor of the first degree. If the value of the property involved is five hundred dollars or more and is less than five thousand dollars * * *, receiving stolen property is a felony of the fifth degree.* * * "

{¶33} Appellant argues that the State failed to present sufficient evidence as to the value of the stolen items and further failed to prove the operability of the firearm pursuant to R.C. §2923.11.

{¶34} As to the value of the stolen items, R.C. §2913.61states:

{¶35} "(D) The following criteria shall be used in determining the value of property or services involved in a theft offense:

{¶36} "(1) The value of an heirloom, memento, collector's item, antique, museum piece, manuscript, document, record, or other thing that has intrinsic worth to its owner

and that either is irreplaceable or is replaceable only on the expenditure of substantial time, effort, or money, is the amount that would compensate the owner for its loss.

{¶37} "(2) The value of personal effects and household goods, and of materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner, which property is not covered under division (D)(1) of this section and which retains substantial utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind and quality.

{¶38} "(3) The value of any real or personal property that is not covered under division (D)(1) or (2) of this section, and the value of services, is the fair market value of the property or services. As used in this section, "fair market value" is the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act."

{¶39} Here, the stolen football helmet and jersey clearly fall within D(1) as collector's items. As such, the valuation for such items was the amount that would compensate the owner for their loss. At trial, Mr. Stottsberry testified that his parents paid between $1,250 and $1,300 for the sports memorabilia. Further, he testified that the stolen gift card was worth $30, as was the stolen hamper.

{¶40} Mr. Wise testified that he paid $400 for the television in November, 2009, approximately one year before it was stolen. (T. at 228-229). He further testified that the $60 value he placed on the Smith and Wesson handgun case was based on what such a case cost in average the last time he had looked online. (T. at 229). Additionally,

he stated that he paid $47 plus tax for ammunition. Id.  He further testified that the engraved pocket watch was worth approximately $100 and that it was given to him by his parents as a gift before he deployed to Afghanistan.  (T. at 223, 229). We find that these personal effects fall within D(2), stating that the value is the replacement value of said items.

**{¶41}** Although the general rule is that one must be qualified as an expert to testify as to value, an "owner is permitted to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it." *Tokles & Son, Inc. v. Midwestern Indemnity Co.* (1992), 65 Ohio St.3d 621, 605 N.E.2d 936, at paragraph two of the syllabus, citing *Bishop v. East Ohio Gas Co.* (1944), 143 Ohio St. 541, 56 N.E.2d 164.

**{¶42}** The court below gave an instruction to the jury concerning the market valuation of stolen property instead of replacement value. Undeniably, the trial court should have delivered a proper instruction on that subject. However, defense counsel herein did not request such an instruction prior to the charge, nor did counsel  object to the charge as given.

**{¶43}**  Crim. R. 30(A) provides:

**{¶44}** '(A) Instructions; Error; Record. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.  Copies of such requests shall be furnished to all other parties at the time of making such requests. The court shall inform counsel of its proposed action upon the requests prior to their

arguments to the jury, but the court shall instruct the jury after the arguments are completed. The court need not reduce its instructions to writing.

**{¶45}** 'A party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.'

**{¶46}** An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long* (1978), 53 Ohio St.2d 91; Crim.R. 52(B). In order to prevail under a plain error analysis, Appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long, supra.* Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

**{¶47}** Under certain circumstances there may be plain error in an erroneous jury instruction on valuation, notwithstanding the defendant's failure to object thereto. See *State v. Donaldson* (Feb. 2, 1984), Cuyahoga App. No. 46958, unreported, at 6 ('Even though no objection was made to this instruction, we must consider it as prejudicial to Appellant's right to a fair trial in view of the fact the state failed to meet its burden of proof as to the element of value.').

**{¶48}** We find the case at bar to be distinguishable from *Donaldson, supra*, because the State did not fail to meet its burden herein. The victims testified as to the proper values of the stolen items.

**{¶49}** Consequently, this Court finds the doctrine of plain error inapplicable under the facts of the instant case.

**{¶50}** Appellant also argues that the State failed to prove that the stolen firearm met the definition of operability.

**{¶51}** Revised Code 2913.51(C) provides:

**{¶52}** "(C) Whoever violates this section is guilty of receiving stolen property. Except as otherwise provided in this division, receiving stolen property is a misdemeanor of the first degree. If …, or if the property involved is a firearm or dangerous ordnance, as defined in section 2923.11 of the Revised Code, receiving stolen property is a felony of the fourth degree. ***"

**{¶53}** The definition of a firearm as contained in R.C. §2923.11, states:

**{¶54}** "(B)(1) Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

**{¶55}** "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."

**{¶56}** The operability of a firearm may be inferred from the circumstances. *State v. Murphy* (1990), 49 Ohio St.3d 206. Operability may be proven by circumstantial evidence, including, but not limited to the representations and actions of the individual

exercising control over the weapon, and the testimony of lay witnesses." *State v. Whitted*, 11[th] Dist. App. No. 96-A-0032.

{¶57} Here, Appellant never objected to the admission of the firearm or challenged its operability at trial the firearm was entered into evidence. The jury was able to see the gun and recognize that it was, in fact, a real gun. Further, there was evidence that ammunition for this gun was also stolen, in addition to testimony as to the amount of money Appellant was able to get for the gun when he sold it.

{¶58} We find that such evidence allowed the jury to find that the firearm in this case was operable as defined in R.C. 2923.11(B).

{¶59} Appellant's second assignment of error is overruled.

### III.

{¶60} In his third assignment of error, Appellant argues that he was deprived of his constitutional right to confront witnesses and present a defense. Specifically, Appellant argues that the trial court erred in barring cross-examination as to the replacement value of the stolen items.

{¶61} Based on our disposition of the previous assignments of error, we find that any error in not allowing cross-examination as to the replacement value was harmless error in that we find that the value of the items involved would still have been found to have exceeded the threshold level on these counts.

{¶62} Based on the foregoing, we find Appellant's third assignment of error not well-taken and hereby overrule same

### IV.

**{¶63}** In his fourth assignment of error, Appellant argues that the jury instructions were erroneous. We disagree.

**{¶64}** As set forth in our disposition of Appellant's second assignment of error, we found that Appellant herein waived all but plain error as defense counsel did not request an instruction on replacement value prior to the charge, nor did counsel object to the charge as given.

**{¶65}** In *Neder v. United States* (1999), 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35, the United States Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, applies to a failure to properly instruct the jury, for it does not *necessarily* render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

**{¶66}** Again, we do not find plain error in this case as, despite the erroneous instruction, the jury had before it testimony and evidence as to the replacement value of the stolen items.

**{¶67}** Appellant's fourth assignment of error is overruled.

V.

**{¶68}** In his fifth assignment of error, Appellant argues that he was denied the effective assistance of counsel. We disagree.

**{¶69}** Our standard of review is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we

must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

{¶70} Appellant raises the following two areas of alleged ineffective assistance: (1) calling Appellant to the stand to testify; and (2) failure to object to the written jury instructions, as outlined in Assignment of Error II and IV.

{¶71} As to Appellant's argument that he was prejudiced by counsel's decision to allow him to testify, Appellant fails to support this argument by citing this Court to those portions of the transcript that support this argument. Further, Appellant fails to support this argument with any case law or develop this argument in any real way to allow this Court to understand how Appellant claims to have been prejudiced by his own testimony.

{¶72} If, as Appellee assumes, Appellant is claiming that he was prejudiced by his counsel's decision to show that Appellant admits to crimes when he is guilty, therefore if he is denying involvement he must be telling the truth, such decision is trial strategy.

**{¶73}** "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, quoting *Michel v. Louisiana* (1955), 350 U.S. 91, 101, 76 S.Ct. 158, 164.

**{¶74}** Appellant further argues that his counsel was ineffective in failing to object to the jury instructions as set forth in the previous assignments of error.

**{¶75}** " 'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.' " *State v. Fears* (1999), 86 Ohio St.3d 329, 347, 715 N.E.2d 136, quoting *State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831.

**{¶76}** With regard to counsel's failure to object to the erroneous jury instructions, as per our previous analysis, this Court is not persuaded that the outcome of the trial would have been different had any such objection been raised by defense counsel. We therefore find Appellant was not prejudiced thereby.

**{¶77}** Accordingly, we hold trial counsel's performance did not fall below an objective standard of reasonable representation, and Appellant was not deprived of the effective assistance of trial counsel.

**{¶78}** Appellant's Fifth Assignment of Error is overruled.

**VI.**

**{¶79}** In his sixth and final assignment of error, Appellant argues that he was denied due process by cumulative errors at trial. We disagree.

**{¶80}** Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights,

even though the errors individually do not rise to the level of prejudicial error. *State v. Garner* (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623, certiorari denied (1996), 517 U.S. 1147, 116 S.Ct. 1444, 134 L.Ed.2d 564.

**{¶81}** In the present case, we do not find that there have been multiple instances of error triggering the cumulative error doctrine.

**{¶82}** Appellant's sixth assignment of error is overruled.

**{¶83}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is affirmed.

Judgment affirmed.

By: Wise, J.

Gwin, P. J., concurs.

Edwards, J., dissents.

EDWARDS, J., DISSENTING OPINION

I concur with the analysis and disposition of the majority except as to the portion of the analysis and disposition of the second assignment of error dealing with Count Four.

I agree that the operability of a firearm may be inferred from the circumstances, but I disagree that the circumstances in this case created the inference beyond a reasonable doubt that the firearm was operable.

Therefore, I would sustain the portion of the second assignment of error dealing with Count Four and enter a conviction for a lesser degree of Receiving Stolen Property on Count Four.

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee             :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
COLIN M. ERICHSEN                      :
                                       :
    Defendant-Appellant            :          Case No. CT2011-0018



For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed.

Costs assessed to Appellant.