[Cite as *State v. Milem*, 2016-Ohio-1096.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2015-CA-65 |
| | : | |
| v. | : | T.C. NO. 14CR0792 |
| | : | |
| CHRIS MILEM | : | (Criminal appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___18th___ day of ___March___, 2016.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty, Reg. No. 0091678, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

CHRISTOPHER T. HERMAN, Atty. Reg. No. 0076894, 232 Greendale Drive, Kettering, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

**{¶ 1}** This matter is before the Court on the Notice of Appeal of Chris Milem, filed June 23, 2015. Milem appeals from his June 18, 2015 Judgment Entry of Conviction, issued following a trial by jury, on one count of receiving stolen property (at a value equal

to or greater than $1,000.00, but less than $7,500.00), namely a utility trailer, in violation of R.C. 2913.51, a felony of the fifth degree. The trial court sentenced Milem to a prison term of 12 months, to be served consecutively to a sentence he was currently serving in another matter. We hereby affirm the judgment of the trial court.

{¶ 2} Milem was indicted on December 22, 2014, and he entered a plea of not guilty on January 21, 2015. Trial commenced on June 15, 2015. Brent Hughes testified that he is employed at Tetra Mold and Tool ("Tetra") in New Carlisle. Hughes stated that he owned a utility trailer that he intended to sell, and that he took the trailer to Tetra in order to clean it up and then display it on the corner of the Tetra lot. He stated that it was a red, dual axle, open, 2012 model with a lift gate on the back. According to Hughes, he purchased the trailer in "around 2007." He identified a photo of the trailer. Hughes also identified another photo of the rear of the trailer depicting a decal with the serial number of the trailer removed, and he stated that when he placed the trailer on the lot to sell, the decal was intact. Hughes stated that he planned to ask "[a]pproximately $1,500" for the trailer. Hughes stated that he noticed that the trailer was missing from the lot on a Monday, and that he called the Sheriff's Department to report the loss. He stated that the trailer was located two weeks later, and that he retrieved it. Hughes identified his bill of sale for the trailer, which reflects that he purchased it for $2,022.06 in 2007.

{¶ 3} Deputy Laurie Beard testified that she is employed at the Clark County Sheriff's Department. She stated that on October 6, 2014, she was dispatched to 51 Quick Road, New Carlisle, on the report of Hughes' stolen trailer. Ashley Fischer testified that she is employed by the Englewood Police Department. She stated that on October 28, 2014, she was dispatched to what was then a Super 8 Motel, at 1515 Rockridge Road,

on a "peace officer call," to assist Nancy Grill retrieve her property from the motel. According to Fischer, Grill had been staying at the motel with Milem, but she did not have a key to get into their room, which was in his name. Fischer stated that she contacted Milem and arranged for him to leave a key for Grill. Fischer stated that while she was at the motel, Grill informed her that there was a stolen trailer on the hotel parking lot. Fischer stated that she observed the trailer on the north side of the lot.

{¶ 4} Fischer testified that she "ran the VIN through LEADS," which is the Law Enforcement Automated Data System, and determined that the trailer had been reported stolen. Fischer identified the photos identified by Hughes as depicting the trailer she observed. She noted that the decal on the trailer had been altered, but she stated that "we could make out pretty much everything except for, I think there was one or two letters or numbers, but it was obvious from the way it was scratched, we were able to tell it was either this one or that one, so when we ran it, it returned as stolen and it matched the description of this trailer." Fischer stated that she arranged for the trailer to be towed from the lot so that "Clark County could take possession of it."

{¶ 5} Nancy Grill testified that she and Milem used to be in a relationship. She stated that she resided with him at the motel for a month or two, and that while living there, Milem brought a utility trailer to the location to "haul brush and trees." Grill identified the photos identified by Hughes and Fischer as the trailer she observed at the hotel. She testified that Milem had use of the trailer for a couple of weeks.

{¶ 6} David Perks testified that he is employed at the Clark County Sheriff's Office as a detective, and that he was involved in the investigation of a trailer that was reported stolen from Quick Road. Perks stated that the "original report was taken on October the

6th and then on October 13th the case was assigned to me for a follow-up." Perks stated that on November 4th he learned that the trailer had been located at the Super 8 Motel. Perks stated that he proceeded to the lot where the trailer had been stored, photographed it, made contact with Hughes at Tetra, confirmed that the trailer was his, and advised him how to recover it. Perks identified a photograph taken by him of the trailer.

{¶ 7} Perks stated that in the course of his investigation, Milem became a suspect in the trailer's theft. He stated that, after speaking with Grill, he "made contact with Mr. Milem on December the 5th and asked him to come in for an interview." Perks testified that he interviewed Milem on December 10, 2014. Perks stated that he advised Milem of his rights, and he identified the form he used to do so, as well as a DVD of the interview, which was played for the jury. Perks testified that in the course of the interview, Milem admitted using the trailer but stated that he did not know the identity of its owner. On cross-examination, Perks testified that Milem "advised he'd taken the license off his [own] trailer and used it on the trailer in question." Perks testified that in the interview, Milem stated that the trailer belonged to a man who stayed downstairs in the motel, and that he did not know his name.

{¶ 8} At the close of the State's case, Milem moved the court for an acquittal, pursuant to Crim.R. 29, arguing that the State failed to prove the value of the trailer, pursuant to R.C. 2913.61(D). According to Milem, the statute "requires some testimony to show what the seller is going to sell it for and what the buyer is willing to buy it for. And while Mr. Hughes told us what he was selling it for, there was no evidence what someone might have bought it for. There is no way of determining what the fair market value of the property would be." The State responded, "not only do we have an invoice,

we also have him stating what he'd sell it for." The court overruled the motion, noting, "I think it's a good argument for closing arguments. And perhaps it might carry more weight in a Rule 29 motion if it was the type of property I think would depreciate." The court further noted that it was "sure there is some wear and tear on the trailer, but I am not so sure if it would depreciate substantially. It was bought for approximately $2,000. He offered to sell it for $1,500." Finally, the court noted, "fair market value is determined probably more adequately when a perspective (sic) buyer comes back with maybe a counteroffer, but I think it will be a jury decision."

{¶ 9} Milem asserts two assignments of error herein. His first assigned error is as follows:

APPELLANT'S CONVICTION FOR RECEIVING STOLEN PROPERTY WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 10} According to Milem, the State "introduced a copy of a bill of sale for the trailer to prove its fair market value. * * * In 2007, Mr. Hughes purchased the trailer new for $2,022.06. * * * This amount, however, is irrelevant to the determination of the trailer's fair market value because it merely represents the retail value for which Mr. Hughes purchased the trailer." Noting that Hughes intended to sell the trailer for "[approximately $1,500," Milem asserts that this "amount is relevant to the determination of the trailer's fair market value, but it represents only half of the evidence the jury needed to make such a determination." Milem further notes in a footnote that Hughes "qualified his selling price with the word 'approximately,' " and he argues that "the fact finder could infer that his selling price could have been higher or lower than $1,500. His response adversely affected the fact finder's ability to determine what the seller would be willing to sell his

property for because the fact finder was left to speculate about the money consideration that Mr. Hughes, as the seller, would accept for the property." Milem further asserts in a footnote that "should this Court rule in his favor, the proper remedy is to reverse the felony conviction and remand the matter for sentencing on a first degree misdemeanor."

{¶ 11} Milem directs our attention to *State v. Griffin*, 1st Dist. Hamilton No. C-080392, 2009-Ohio-2482, and *State v. Reese*, 165 Ohio App.3d 21, 2005-Ohio-7075, 844 N.E.2d 873 (7th Dist.). In *Griffin*, Michael Griffin was convicted of receiving stolen property, namely a global-positioning system ("GPS"), a felony of the fifth degree. *Id.* ¶ 1. The owner of the GPS, David Warner, upon discovering its absence from his garage, "looked for the unit on Craigslist, an Internet website on which people sell used items." *Id.* ¶ 2. "Warner saw a GPS unit similar to the one that had been stolen, and he arranged to meet the seller. Before going to the appointed place, Warner alerted the police. Police Officer Carlos Sherman arrived before Warner and spoke to a person later identified as Griffin." *Id.*, ¶ 3. While Griffin advised Sherman that he had "arranged to meet someone so that he could purchase a GPS unit," Sherman learned upon investigation that "Griffin was in possession of Warner's GPS unit." *Id.*, ¶ 4.

{¶ 12} Warner testified at trial that he bought the GPS unit for "around $800 several months before it had been stolen. He produced a more recent advertisement for the device that listed a retail price for a new unit of the same model as $589.27." *Id.,* ¶ 5. The First District determined that while "the finding of guilt was proper, Griffin could have been properly convicted of only a misdemeanor of the first degree." *Id.*, ¶ 14. The Court noted that "under R.C. 2913.61(D)(3), the value of personal property is determined by its 'fair market value' * * *," as distinguished in the statute from "replacement value,

which is the measure of value for heirlooms and collector's items, and for items that are used in the victim's profession, business, trade or occupation." *Id.,* ¶s 11, 12. The First District determined as follows:

> In this case, the state did not present evidence of the "fair market value" of the GPS unit. Warner's testimony established only that he had paid $800 for the item and that, at the time of the trial, he could have replaced it with a new device for $598.27. The state did not establish what a willing buyer would have paid a willing seller for a used GPS device. And in light of the evidence that the model owned by Warner was rapidly depreciating in value, the trial court could not have reasonably inferred that a used model would have retained a value of at least $500.

*Id.*, ¶ 13.

{¶ 13} In *Reese*, Antwuan Reese was convicted on one count of theft, in violation of R.C. 2913.02(A)(1), a felony of the fifth degree. *Id.*, ¶ 1. Reese phoned Gena Schiff in response to an ad she placed in the Youngstown Vindicator to sell a ring for $1,500. *Id.*, ¶ 2. The ring had been given to her by her mother, who told Schiff "before she died seven years ago, that the ring was purchased by Schiff's father 'a lot of years ago' for $3,500.00." *Id.* Schiff and her fiancé met Reese at the address he provided, and after discussing the ring, they decided to leave. *Id.*, ¶ 3. Before they could do so, Reese fled with the ring and was later apprehended, without the ring but with the Youngstown Vindicator advertisement for it in his possession. *Id.*, ¶ 3-4.

{¶ 14} On appeal, Reese objected to Schiff's testimony about the value of the ring, as related to her by her mother. *Id.*, ¶ 16. The Seventh District determined that the

testimony was hearsay, and that the trial court erred in admitting it.   *Id.*, ¶ 19. Reese further asserted that his conviction was not supported by the sufficiency of the evidence. *Id.*, 24. The Seventh District noted that the "most direct testimony given about the value of the ring was the statement made by Schiff," noting that "we have already concluded that it was error for the trial court to have admitted that testimony, as it was hearsay that did not fall into any exception." *Id.*, ¶ 28. The State responded that the error was harmless "because there were other ways of determining the value of the ring," explaining that the "jury heard evidence that the ring was advertised in the Youngstown Vindicator for $1,500," and it was instructed that "if it found the piece of jewelry to be an heirloom, the value would be equal to the expenditure of time, effort, or money that would adequately compensate Schiff for her loss."   *Id.*   Finally, the State suggested "that the value could be implied, as Schiff testified it was a diamond-and emerald ring."   *Id.*

{¶ 15} The Seventh District first determined that "the advertisement constitutes hearsay," and "does nothing more than echo Schiff's personal belief that this ring is worth a certain amount of money because her deceased mother told her so." *Id.*, ¶ 29. The Seventh District further stated as follows:

> We liken this situation to someone's attempting to sell an item on eBay or at a garage sale. Although someone may expect to be offered substantial sums of money for something he is offering to sell, he will never know its true market value until someone starts placing good-faith bids on and offers to buy the item. Here, we have no evidence of what a good-faith purchaser would have paid for the ring. It is possible that someone may have offered $1,500 for the ring, but it is just as likely that Schiff would have

received offers much lower than the requisite $500 required by the statute. We simply cannot allow a conviction to stand on mere speculation as to what someone might have paid for this ring.

*Id.*, ¶ 31.

{¶ 16} Citing a dictionary definition of heirloom, the Seventh District also determined that "a ring being sold in the local newspaper's classified section for less than half of what the owner claims it to be worth is not a (sic) heirloom by this standard or the legal standard as described in the statute." *Id.*, ¶ 33. Finally, noting in part that there was no testimony about the carat weight of the stones in the ring or their composition, the court found that "this placed the jury in the position of speculating as to the value of this ring." *Id.*, ¶ 34. The court reversed Reese's sentence and remanded the matter to the trial court for resentencing on misdemeanor theft. *Id.*, ¶ 36

{¶ 17} In response to Milem's arguments, the State cites Hughes' testimony that he bought the trailer in 2007 for $2,022.66 and notes that his sales receipt was admitted into evidence. The State further cites Hughes' testimony that he wanted $1,500.00 for the trailer at the time it was stolen. According to the State, Hughes' testimony, if believed, "was sufficient to support the jury's finding that the value of the stolen property was $1,000.00 or more, thereby elevating Milem's conviction for receiving stolen property to a fifth-degree felony." The State in part relies upon *State v. Gray*, 12th Dist. Brown No. CA2015-01-004, 2015-Ohio-3174, and it further asserts that this Court "has determined that a detective's testimony as to value is probative of the item[']s fair market value for purposes of R.C. 2913.61(D)(3)," in reliance upon *State v. Hanke*, 2d Dist. Clark No. 08CA0053, 2009-Ohio-3023.

**{¶ 18}** In *Gray*, Timothy Gray was convicted in part of theft and receiving stolen property, namely fencing supplies. *Id.,* ¶ 2-3. Gray argued on appeal that there was insufficient evidence to support his fifth-degree felony convictions for receiving stolen property and theft. *Id.*, ¶ 7. In affirming the judgment of the trial court, the Twelfth District determined as follows:

Gray argues his fifth-degree felony convictions for receiving stolen property and theft must be reversed because the state "never presented any credible evidence of the value of Mr. Skinner's property, other than his own testimony." However, Gray has cited no authority to support his contention that a victim's testimony is insufficient to prove the value of the stolen property involved in order to elevate these crimes to fifth-degree felonies. Rather, after a simple review of the applicable case law, Ohio courts have actually held the exact opposite to be true. *See State v. Bartolomeo*, 10th Dist. Franklin No. 08AP–969, 2009–Ohio–3086, ¶ 25, citing *State v. Lockhart*, 115 Ohio App.3d 370, 374 (8th Dist.1996) (holding victim's testimony was sufficient to prove value of stolen property for purposes of theft charge). This includes a number of cases from this very court on this very same issue. *See, e.g., State v. Noble*, 12th Dist. Warren No. CA2014–06–080, 2015–Ohio–652, ¶ 22 (finding victim's testimony regarding the value of property stolen was sufficient to elevate theft offense to a fifth-degree felony); *State v. Penwell*, 12th Dist. Fayette No. CA2010–08–019, 2011–Ohio–2100, ¶ 67–69 (finding victim's testimony as to the replacement value of stolen property was sufficient to elevate receiving

stolen property offense to a fifth-degree felony).

*Gray*, ¶ 12.

{¶ 19} In *Hanke*, Donald Hanke was convicted of fifth-degree felony theft, in violation of R.C. 2913.02(A)(1); he and an accomplice removed the exhaust system from Monte Tabb's 1997 Nissan Maxima, including the vehicle's catalytic converter, *Id.*, ¶ 1-2. At trial, Tabb testified that after paying a deductible of $100.00, he received $1,600.00 from his insurance company to replace the Nissan's exhaust system as a result of the theft and damage to his car, and that $600.00 "of that amount represented the cost of a new catalytic converter, an aftermarket unit being unavailable." *Id.,* ¶ 12. Also, "Detective Gregory Ashworth testified that on the street the 'scrap value' of a catalytic converter can be as much as one hundred and fifty dollars." *Id.*

{¶ 20} This Court determined as follows:

Tabb's testimony fails to establish the fair market value of the property that was stolen under the criteria in R.C. 2913.61(D)(3). The cost of replacing stolen property does not demonstrate what a willing buyer would give and a willing seller would take for it. Detective Ashworth's testimony that the scrap value on the street of a catalytic converter is up to one hundred and fifty dollars is probative of its fair market value for purposes of R.C. 2913.61(D)(3). However, that amount is less than the minimum value of five hundred dollars that R.C. 2913.02(B)(2) establishes as a basis to increase a misdemeanor theft offense to a fifth degree felony.

*Id.,,* ¶ 13. This Court reversed Hanke's conviction and sentence and remanded the matter "for the sole purpose of entering a conviction for petty theft and resentencing

Defendant accordingly." *Id., ¶*14.

{¶ 21} As this Court has previously noted:

A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991):

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

*State v. Gilliam*, 2d Dist. Clark No. 09CA0075, 2012-Ohio-834, ¶ 8-9.

{¶ 22} R.C. 2913.51provides as follows:

(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

* * *

(C) Whoever violates this section is guilty of receiving stolen property. Except as otherwise provided in this division or division (D) of this section, receiving stolen property is a misdemeanor of the first degree. If the value of the property involved is one thousand dollars or more and is less than seven thousand five hundred dollars, * * * receiving stolen property is a felony of the fifth degree. * * *.

{¶ 23} R.C. 2913.61(D) sets forth the criteria to be used in determining the value of property in relevant part as follows:

* * *

(3) The value of any real or personal property that is not covered under division (D)(1) or (2) of this section, * * * is the fair market value of the property * * *. As used in this section, "fair market value" is the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act.

{¶ 24} Having examined the evidence in a light most favorable to the State, we conclude that any rational trier of fact could have found, beyond a reasonable doubt, that the fair market value of Hughes' trailer was equal to or greater than $1,000.00, and that Milem's conviction of a fifth degree felony was accordingly supported by sufficient evidence. In addition to the authorities cited by the State, we note that the Supreme Court of Ohio has indicated that "Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the

market value of the property." *Smith v. Padgett*, 32 Ohio St. 3d 344, 513 N.E.2d 737 (1987). Further, as noted by the Fifth District, "[a]lthough the general rule is that one must be qualified as an expert to testify as to value, an 'owner is permitted to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it.' (citations omitted)." *State v. Erichsen*, 5th Dist. Muskingum No. CT2011-0018, 2012-Ohio-137, ¶ 41.

{¶ 25} As noted above, Hughes testified that he bought the trailer in 2007 for $2,022.06, and his authenticated sales receipt was entered into evidence. He testified that he intended to sell the trailer for $1,500.00. The photograph of the trailer reflects that it was in good condition. We note that counsel for Milem failed to cross-examine Hughes regarding the value of the trailer.

{¶ 26} We find that Milem's reliance upon *Griffin* and *Reese* is misplaced. In *Griffin*, there was evidence that the model of the GPS owned by Warner was rapidly depreciating in value, and there is no evidence herein that the trailer was subject to substantial depreciation. In *Reese*, Schiff's testimony about the value of the ring, and the advertisement in the Youngstown Vindicator, were found to be inadmissible hearsay, and given the lack of evidence regarding the weight and composition of the stones in the ring, the jury was accordingly placed in the position of speculating as to the ring's value. There is no such lack of evidence in the matter before us.

{¶ 27} Since Hughes was competent to testify about the value of his trailer (and his testimony was uncontroverted), we conclude that the essential elements of fifth-degree-felony receiving stolen property were proven beyond a reasonable doubt. Accordingly, Milem's first assignment of error is overruled.

**{¶ 28}** Milem's second assignment of error is as follows:

THE COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29.

**{¶ 29}** Milem again asserts that, since "the State failed to present evidence about what a willing buyer would pay for Mr. Hughes' used trailer, either through witness testimony or the admission of exhibits, it failed to prove that the trailer's fair market value was equal to or greater than $1,000."

**{¶ 30}** As this Court has previously noted: " 'Reviewing the denial of a Crim. R. 29 motion * * * requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim.' *State v. Cokes*, 2d Dist. Montgomery No. 26223, 2015–Ohio–619, ¶ 23 (internal citation omitted)." *State v. Roberts*, 2d Dist. Montgomery No. 26431, 2015-Ohio-2716, ¶ 8. Having determined above that Milem's conviction is supported by the sufficiency of the evidence, Milem's second assignment of error is overruled.

**{¶ 31}** The judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Ryan A. Saunders
Christopher T. Herman
Hon. Douglas M. Rastatter